**Jimmy and Hillary BYNUM, Individually and as Next Friends of Minor Children Thomas and Clark Bynum, Appellants,**

v.

**PRUDENTIAL RESIDENTIAL SERVICES, LIMITED PARTNERSHIP, d/b/a Moran, Stahl & Boyer; Moran Stahl & Boyer, Limited Partnership, d/b/a Prudential Relocation, d/b/a Prudential Relocation Intercultural**

Services, Limited Partnership d/b/a Prudential Relocation Limited Partnership, d/b/a Prudential Relocation, Limited Partnership, d/b/a Prudential Resources Management and d/b/a Prudential Resources Management, Limited Partnership; Prudential Homes Corporation d/b/a Prudential Relocation; and John and Susan McNamara, Appellees.

No. 01–02–00747–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 11, 2004.

Elizabeth Ann Wiley, Andrews & Kurth, Joe C. Holzer, Andrews & Kurth LLP, Houston, TX, for Appellant.

Charles Portz, Michael J. Reviere, Richard T. Stilwell, Fulbright & Jaworski, L.L.P., Rachel Clingman, Fulbright & Jaworski, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION ON MOTION
## FOR REHEARING

SHERRY RADACK, Chief Justice.

On this day, the Court considered appellants' motion for rehearing. The motion is **DENIED.** However, we withdraw our previous opinion of November 10, 2003, and issue this opinion in its stead. Our judgment of November 10, 2003, remains unchanged.

Appellants, Jimmy and Hillary Bynum, individually and as next friends of their minor children, Thomas and Clark Bynum, sued various Prudential entities,[1] R & R Inspection Service, Peverely Engineering Inc., Ray Kindsfather, and John and Susan McNamara, appellees, asserting claims of breach of contract, breach of express and implied warranties, violation of deed restrictions, violations of the DTPA, fraud, violations of section 27.01 of the Texas Business and Commerce Code, negligence, negligence *per se*, negligent misrepresentation, failure to provide disclosures required by section 5.008 of the Texas Property Code, and strict products liability. Additionally, the Bynums sought the equitable relief of rescission, and a constructive trust.

Prudential and the McNamaras filed both no-evidence and traditional motions for summary judgment that were granted by the trial court as to all of the claims raised by the Bynums against them. The Bynums' claims against Prudential and the McNamaras were then severed by the trial court from the Bynums' claims against remaining defendants so that the judgment disposing of the Bynums' claims against Prudential and McNamara would become final.

The Bynums assert nine issues on appeal, which we reduce to seven issues for the disposition of the case, contending that summary judgment against them was improper because (1) the "as is" clause in the purchase agreement cannot be enforced against the Bynums; (2) there is an issue of material fact as to whether there was a breach of express and implied warranties; (3) there is an issue of material fact as to whether, under section 5.008 of the Texas Property Code, they were entitled to ter-

---

1. The related Prudential entities are Prudential Residential Services, Limited Partnership, d/b/a Moran, Stahl & Boyer; Moran Stahl & Boyer, Limited Partnership, d/b/a Prudential Relocation, d/b/a Prudential Relocation Intercultural Services, Limited Partnership d/b/a Prudential Relocation Limited Partnership, d/b/a Prudential Relocation, Limited Partnership, d/b/a Prudential Resources Management and d/b/a Prudential Resources Management, Limited Partnership; Prudential Homes Corporation d/b/a Prudential Relocation. We will hereinafter refer to these entities collectively as "Prudential."

minate the purchase of their home and recover monies paid; (4) there is an issue of material fact as to whether the Bynums are entitled to the equitable relief of recission under the doctrine of mistake; and (5) there is an issue of material fact as to where Prudential or the McNamaras engaged in statutory fraud or negligent misrepresentation. Additionally, the Bynums argue that the trial court erred in refusing to grant their motion for partial summary judgment against the McNamaras on their claim of negligence *per se*, and erred in denying the Bynums' motion for continuance.

We affirm.

## Facts

We review the facts of this case taking all evidence in favor of the Bynums as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In 1999, the McNamaras hired Ray Kindsfather to remodel their home over a period of several months. Most of the work involved remodeling two bathrooms in the house. The hall bath was enlarged by the removal of a wall, and a shower, commode, and sink were added to it. Significant electrical and plumbing work was done in both of the bathrooms, and new sewer lines were added to connect with previously existing ones.

In early 2000, the McNamaras decided to sell their home. In April of 2000, the McNamaras' employer hired Prudential to help the McNamaras sell their home and relocate to a new city. The McNamaras separately hired a third-party agent with Martha Turner Properties to list the home for sale and represent their interests. The McNamaras filled out and faxed to Prudential a "Homeowners Disclosure Statement," (HDS) provided by Prudential, for the purpose of aiding Prudential in the appraisal and purchase process. In the HDS, one of the questions was as follows: "were any structural additions, changes, or repairs made to the property by former owners without obtaining all necessary permits and government approvals?" To that question, the McNamaras answered "no." The following question in the HDS asked "have you made any structural additions, changes, or repairs to the property?" The McNamaras answered "yes," and next to the "yes" box wrote "remodeled bathrooms." The third question asked "have you obtained all necessary permits and government approvals?" To this question, the McNamaras wrote "N/A."

The Bynums, who purchased the home from Prudential, received two section 5.008 disclosure statements on the home. *See* TEX. PROP.CODE ANN. § 5.008 (Vernon Supp. 2003). One was from the McNamaras, and the other was from Prudential. On the McNamaras' disclosure form, the McNamaras checked "no" to the question of whether they were aware of any "room additions, structural modifications, or other alterations or repairs made without necessary permits or not in compliance with building codes in effect at that time." The disclosure form from Prudential was signed and dated by Prudential, but on each of the pages, the sections with questions regarding the condition of the property was marked out with an "X."

On May 4, 2000, the Bynums signed an earnest money contract offer to purchase the home for $341,000. The Bynums also signed and initialed a five-page rider that was incorporated as part of the offer. The rider contained the following statement: "Buyer understands that Seller is a relocation management company and has never lived in or on the Property. The Property, including the contents, being sold and purchased are not new, and are being sold 'as is'—in their present condition." The rider also contained an option period under

which the Bynums, after paying $500.00, could terminate the contract for any reason within five days after the contract was signed. The rider provided that if the Bynums did not terminate the contract during the option period, then they were "deemed to have accepted the Property in its current condition."[2] With regard to the section 5.008 disclosure statements from the McNamaras and Prudential, the rider provided "BUYER AGREES THAT BUYER IS NOT RELYING ON THE ACCURACY OF THESE DOCUMENTS." Finally, the rider contained a provision stating the following:

> Buyer's (a) failure to notify Seller in writing of any defects within the time limits provided in this Rider, or (b) acceptance of the Deed at settlement shall constitute Buyer's full acceptance of the condition of the Property and a waiver of Buyer's right to object to its condition or assert any claim related to the Property at any time in the future. This provision shall survive delivery of the Deed and the closing.

Prudential accepted the Bynums' earnest money contract offer on May 8, 2000. On May 20, 2000, the contract was amended to allow for a few additional terms, among which was the term that "Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following repairs and treatment: . . ." The parties are not in dispute as to whether Prudential made the repairs.

Prior to closing, the Bynums had the home inspected by professional inspectors. The electrical work, plumbing, and structural modifications performed during the remodeling, however, were, according to the Bynums, either behind walls, covered with insulation, or buried in the concrete slab, and, thus, were not readily subject to inspection. On November 11, 2000, after the closing, and several months after the Bynums moved into the house, Jimmy Bynum noticed that sewer water was leaking into the backyard as a shower inside of the house was being run. This problem was the first of many that were eventually discovered. Upon further investigation, the Bynums discovered that, because of the absence of a vent pipe, sewer water was collecting under the master bath and was spilling over the side of the house into the backyard. The Bynums also found that the areas outside of the hall bath were "soggy," which was being caused by a problem with the sewer drainage from the hall bathroom. In the attic of the home, it was discovered that prohibited PVC plastic pipe had been used, and that, as a result, a leak had developed, allowing, what the Bynums contend, is toxic Stachybotrys mold to grow.[3] Additionally, the electrical connections in the bathrooms were not grounded, which created an electrocution hazard, and the new framing, done after the remodeling, was not adequately supporting the attic, which caused a crack to appear in a bedroom ceiling.

The Bynums contend that much of the work performed was in violation of the codes of the City of Houston, and would have failed inspection by City of Houston building inspectors. Some of the violations that are alleged by the Bynums to have occurred in the remodeling of the home include (1) failure to obtain the necessary plumbing, electrical, and building permits; (2) failure to have licensed electricians and licensed plumbers do the electrical and plumbing work; (3) prohibited

---

**2.** The Bynums paid the $500.00 fee, but did not terminate the contract during the option period.

**3.** The type of mold present in the home is a point of contention in this case.

use of PVC pipe within the home; and (4) prohibited use of an open sewer vent line.

As a result of the violations and subsequent mold problem, the Bynums vacated the home, leaving their possessions behind to be treated for mold. The Bynums claim that the mold caused Clarke and Thomas Bynum to suffer respiratory problems, and that they are financially unable to repair the defective remodeling performed on the house.

## Standard of Review

The standard for reviewing a motion for summary judgment is as follows: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49. A defendant is entitled to summary judgment if at least one element of each of the plaintiff's causes of action is negated as a matter of law. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476–77 (Tex.1995).

A no-evidence motion for summary judgment is proper when, after adequate time for discovery, the respondent produces no evidence to support one or more essential elements on the cause of action specified in the motion. *Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 715 (Tex.App.-Houston [1st Dist.] 2002, no pet.)

## The Validity of the "As Is" Clause

In issue one, the Bynums argue that the "as is" clause, and the other like clauses in the Prudential rider or earnest money contract that purport to disclaim warranties cannot be used to bar their claims against Prudential and the McNamaras because the clauses (1) are inconspicuous boilerplate terms entered into by parties of greatly disproportionate sophistication; (2) are the product of fraudulent misrepresentation or concealment of information; (3) cannot be used to release a party from intentional wrongful future conduct; (4) cannot be used to waive DTPA claims; and (5) cannot be enforced against the Bynum's minor children.

■ The Texas Supreme Court has held that, generally, an "as is" clause will defeat the element of causation in DTPA, fraud, and negligence claims. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995). When an agreement to purchase something "as is" is executed, a buyer agrees to make his own appraisal of the bargain and accept the risk that he may be wrong. *Id.* The seller gives no assurances, express or implied, concerning the value or condition of the thing sold, and the buyer chooses to rely completely on his own determination of the condition and value of the purchase, removing the possibility that the seller's conduct will cause him damage. *Id.*

■ There are, however, exceptions to the general rule. A buyer is not bound by an "as is" clause that is the product of fraudulent representation or concealment of information by the seller. *Id.* at 162; *Smith v. Levine*, 911 S.W.2d 427, 431–32 (Tex.App.-San Antonio 1995, writ denied) (holding that "as is" clause in contract for purchase of house did not negate element of causation when there was evidence of affirmative misrepresentations by seller). As the court in the *Prudential* decision noted,

A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agree-

ment to purchase "as is", and then disavow the assurance which procured the "as is" agreement. Also, a buyer is not bound by an "as is" agreement if he is entitled to inspect the condition of what is being sold but is impaired by the seller's conduct. A seller cannot obstruct an inspection for defects in his property and still insist that the buyer take it "as is." In circumstances such as these an "as is" agreement does not bar recovery against the seller.

*Prudential,* 896 S.W.2d at 162.

 In determining whether an "as is" clause is enforceable, we must also review the totality of the circumstances surrounding the agreement. *Id.* Whether the "as is" clause is an important part of the basis of the bargain, rather than an incidental "boiler-plate" provision, and whether the parties have relatively equal bargaining positions, are factors to consider. *Id.; see also Oakwood Mobile Homes, Inc. v. Cabler,* 73 S.W.3d 363, 371–72 (Tex. App.-El Paso 2002, pet. denied) (holding that seller's disclaimers did not bind husband and wife purchasers when husband had a tenth grade education and had never purchased a home before, wife had high school diploma and one year of college, and the seller was in business of selling homes).

### Surrounding Circumstances and Sophistication of the Parties

 The Bynums contend that the "as is" clause and other like disclaimers in the Prudential Rider and earnest money contract are not binding on them because the Bynums were "lacking any sophistication in purchasing property or reviewing contracts," and because the disclaimers were inconspicuous boiler-plate provisions. *See Prudential,* 896 S.W.2d at 162.

We will not dispute the Bynums' contention that the "as is" clause in the Pruden-

tial rider agreement was a standard boiler-plate provision, but we are not convinced that the Bynums were so unsophisticated that enforcing the provisions would be unfair. We agree with the Bynums that Prudential, a large company that specializes in real estate transactions, has a great amount of sophistication, but the Bynums did not face Prudential alone. During the Bynums' dealings with Prudential, the Bynums were represented by Joan Bynum, a licensed real estate broker with Greenwood King Properties. Additionally, the Bynums were not strangers to "as is" contracts. Mr. Bynum testified in his deposition that he had purchased and sold other properties before buying the home in this case, including property that was purchased "as is." Mr. Bynum also testified that he was a manager for Salvage Sale, which was a company that sold salvaged goods "as is." Finally, the Bynums, before closing on the house, had the home inspected by professional inspectors.

We do not believe that, under these circumstances, the Bynums are entitled to have the "as is" clause set aside on the grounds that they were unsophisticated purchasers agreeing to boiler-plate provisions. *See id.* As for the Bynums' argument that the agreement was inconspicuous, there is no dispute that the Bynums were aware that they were purchasing the house "as is." Mr. Bynum testified in his deposition that he read the "as is" clause at the time that he signed the agreement. A party who, before entering into a contract, has actual knowledge of terms that he later complains of, is not entitled to escape enforcement of those terms on the ground that the terms are inconspicuous. *See Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *Allied Fin. Co. v. Rodriguez,* 869 S.W.2d 567, 571–72 (Tex.App.-Corpus Christi 1993, no writ). Accordingly, we hold that the Bynums are not enti-

tled to have the "as is" clause and like disclaimers set aside on the grounds that the terms were inconspicuous boiler-plate provisions that were agreed to by unsophisticated purchasers.

### Fraudulent Representation and Concealment

■ The Bynums also allege that the "as is" clause is not enforceable because Prudential and the McNamaras fraudulently misrepresented and concealed material facts. The Bynums contend that the McNamaras and Prudential knew that the remodeling was done without the proper permits, but that they purposefully withheld the information from the Bynums.

■ In order to set aside the "as is" clause on the basis of fraudulent misrepresentation, the Bynums must show actual knowledge of the misrepresentation. *Prudential*, 896 S.W.2d at 162 ("as is" clause could not be set aside on basis of fraudulent misrepresentation because, while there may have been evidence that Prudential should have known of property condition, there was no evidence that they actually knew of condition).

The Bynums contend that the HDS sent by the McNamaras to Prudential is some evidence that the McNamaras and Prudential knew that remodeling work had been done without the necessary permits. We disagree. In the HDS, question 7(a) was as follows: "were any structural additions, changes, or repairs made to the property by former owners without obtaining all necessary permits and government approvals?" The McNamaras answered "no." Question 7(b) asked "have you made any structural additions, changes, or repairs to the property?" The McNamaras answered "yes," and next to the "yes" box wrote "remodeled bathrooms." Question 7(c) asked "have you obtained all necessary permits and government approvals?"

To this question, the McNamaras wrote "N/A."

We do not see an inconsistency in the answers given by the McNamaras on the HDS. The only reasonable interpretation to be given the McNamara's "N/A" response to question 7(c) is that they believed that the question was "not applicable" because no permits were necessary for the remodeling that they admitted having done. As such, the HDS that the McNamaras provided to Prudential is consistent with the McNamaras' representation to the Bynum's in the § 5.008 disclosure that they were "not aware" of modifications made without necessary permits. Put simply, the McNamara's "N/A" answer does not create a reasonable inference that the McNamaras knew that permits were necessary, but not obtained.

Having determined that there is no evidence that Prudential had actual knowledge that the McNamaras remodeled their home without the required permits, we now determine if there was any other evidence that the McNamaras had actual knowledge that the remodeling was performed without necessary permits.

In the McNamaras' section 5.008 disclosure form provided to the Bynums, the McNamaras answered "no" to the question of whether they had knowledge of any "room additions, structural modifications, or other alterations or repairs made without necessary permits or not in compliance with building codes in effect at that time." The Bynums argue that the McNamaras made the disclosure with actual knowledge of its falsity, and cite the following as factors in support of such a finding: (1) the HDS form submitted to Prudential by the McNamaras shows that the McNamaras knew that they should have had permits; (2) Mrs. McNamara's deposition indicates that she intentionally

did not obtain approval for the remodeling from the Civic Association, which was required under the deed restrictions; (3) the McNamaras failed to inquire as to the qualifications of Mr. Kindsfather; (4) the McNamaras had heard of building permits; (5) the McNamaras' neighbors remodeled their homes with building permits, and the permits are required to be posted in a window and visible from the street; and (6) Mr. Kindsfather, who performed the work, allegedly stated to Mr. Bynum that his standard policy was to tell homeowners about the options of proceeding either with or without building permits, and the consequences of either action.

As an initial matter, we will discuss factors (1) and (6) listed above. As we have already discussed, the McNamara's "N/A" response on the HDS does not create any inference that the McNamaras knew that permits were required, but did not obtain them. As such, (1) above provides no evidentiary support for the Bynums.

■ Similarly, (6) above cannot be considered as evidentiary support for the Bynums because issue of Kindsfather's statement was not raised in response to the motion for summary judgment. Instead, Kindsfather's alleged statement was offered to the court in connection with the Bynums' motion for continuance. When there is a no-evidence motion for summary judgment, as was the case here, the trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. Tex.R. Civ. P. 166a(i). In this case, the Bynums did not produce the affidavit as evidence to support their causes of action; rather, the affidavit was executed by Mr. Bynum in support of the Bynums'

motion for continuance. Further, the Bynums, in their written responses to the motions for summary judgment from Prudential and the McNamaras, never argued that the alleged statement from Kindsfather was evidence that supported their causes of action. Accordingly, we will not consider the evidentiary value of the affidavit on appeal.[4] *See State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex.1986) (holding that, on appeal, non-movant may not raise grounds that it did not raise in trial court in opposition to motion for summary judgment); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 674–75 (Tex.1979).

■ Having determined that numbers (1) and (6) do not provide any evidentiary support for the Bynums, we review the Bynums' remaining evidence to determine whether they sufficiently raise a fact question about whether the McNamara's had actual knowledge that permits were required, but not obtained. If we consider as true the Bynums' evidence that the McNamaras had intentionally declined to obtain approval from the Civic Association, had failed to inquire as to Kindsfather's qualifications, had heard of building permits, and had neighbors that had obtained building permits, we conclude there is still insufficient evidence to raise a fact issue about the McNamara's actual knowledge that their remodeling was done without the necessary permits. In *Prudential*, the court held that, even though there was evidence that Prudential knew that most buildings built in the same era as the building in question contained asbestos, and even though there was evidence that Prudential should have suspected the use of asbestos in the building, that evidence

**4.** Having determined that the affidavit was not evidence produced in response to appellees' motions for summary judgment, we need

not discuss whether the evidence was inadmissible hearsay, or whether it was probative regardless of whether it was hearsay.

was not evidence that Prudential "actually knew" of the asbestos. *Prudential,* 896 S.W.2d at 160, 162.

In this case, the evidence produced by the Bynums is no more compelling than the evidence produced by the plaintiff in *Prudential.* While the evidence might support the proposition that the McNamaras were careless in remodeling their home and were aware that building permits existed and were sometimes required for building projects, there is no evidence that the McNamaras actually knew that they had remodeled without the necessary permits. *See id.* Accordingly, we hold that, because there is no evidence of intentional misrepresentation or concealment by the McNamaras or Prudential, the Bynums are not entitled to have the "as is" clause set aside on those grounds.

### Intentional Wrongful Future Conduct

The Bynums argue that the "as is" clause cannot release Prudential or the McNamaras from liability for their intentional wrongful future conduct. The intentional wrongful future conduct complained of by the Bynums is the violation of Prudential and the McNamaras' continuing obligation to disclose material information to the Bynums, namely, the HDS furnished by the McNamaras to Prudential.

A cause of action exists under the DTPA if a seller fails to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed. TEX. BUS. & COM.CODE ANN. § 17.46(b)(24) (Vernon 2002).

We have already determined that the Bynums produced no evidence showing that either the McNamaras or Prudential had actual knowledge that the remodeling was done without necessary permits. Ac-

cordingly, there being no evidence of intentional wrongful conduct, we need not further discuss the Bynums' contention.

### Waiver of DTPA Claims

The Bynums argue that, even if the "as is" clause is enforceable, it cannot be used to waive their claims under the DTPA because the "as is" clause does not comply with the waiver requirements of the DTPA. *See* TEX. BUS. & COM.CODE ANN. § 17.42(a)-(d) (Vernon 2002).

A similar argument was made by the appellant in the *Prudential* decision. The *Prudential* court resolved the issue by stating that the "as is" clause is not a waiver of DTPA rights, such that the waiver provisions of the DTPA need be complied with; rather, it is a statement that no basis exists for the assertion of such rights. *Prudential,* 896 S.W.2d at 163–64. The court further held that the "as is" clause indicates the agreement of the buyer that there were no express or implied warranties, and that the seller's conduct did not harm, and would not harm him because the buyer was relying entirely upon his own examination of the property. *Id.* at 164. Accordingly, we hold that, here, as in *Prudential,* the "as is" clause can be used as a basis for summary judgment against the buyer as to his DTPA claims, and the seller need not comply with the waiver requirements of the DTPA.

### Applicability of "As Is" Clause to the Bynums' Minor Children

The Bynums contend that, because their minor children do not have capacity to contract and were not parties to the agreement, they should not be bound by the "as is" clause.

Under the DTPA, a plaintiff must have standing as a consumer in order to assert rights under the DTPA. *See* TEX. BUS. & COM.CODE ANN. § 17.50 (Vernon

2002); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706 (Tex.1983). A plaintiff's standing as a consumer is established by his relationship with the transaction, not by a contractual relationship with the seller. *Kennedy v. Sale,* 689 S.W.2d 890, 892–93 (Tex.1985); *Flenniken,* 661 S.W.2d at 707; *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex.App.-San Antonio 2000, no pet.). A third-party beneficiary can have standing to assert a cause of action under the DTPA if the transaction was intended to benefit the third party. *Lukasik,* 21 S.W.3d at 401; *see also Wellborn v. Sears, Roebuck & Co.,* 970 F.2d 1420, 1426–27 (5th Cir.1992) (son of woman who purchased garage door opener had standing to sue under the DTPA because the purpose of the purchase was to benefit the son).

 In this case, even if the Bynum children are intended beneficiaries of the contract to purchase the home, such that they have standing to sue under the DTPA, there is no authority cited by the Bynums, or any authority that we could find, that would support the proposition that the Bynum children, as intended beneficiaries, would not be bound by the terms to the contract, such that the "as is" clause would not apply to them. Generally, a third-party beneficiary will not have greater rights under a contract than the party who bargained for their benefit. *See Texas Farmers Ins. Co. v. Gerdes By & Through Griffin Chiropractic Clinic,* 880 S.W.2d 215, 218 (Tex.App.-Fort Worth 1994, writ denied) (third-party beneficiary under an insurance contract does not have greater rights than the named insured); *Bunnett/Smallwood & Co. v. Helton Oil Co.,* 577 S.W.2d 291, 295 (Tex.Civ.App.-Amarillo 1978, no writ) (third-party benefi-

ciary has no greater rights than those that were promised in the contract). Accordingly, because third-party beneficiaries are not entitled to greater contractual rights than were bargained for by the original parties to the contract, we hold that the Bynum children are not entitled to have the "as is" clause set aside on the ground that they were not parties to the contract.

### Breach of Express and Implied Warranties

In issue two, the Bynums argue that there is an issue of material fact as to whether Prudential and the McNamaras breached express or implied warranties. The Bynums contend that the section 5.008 disclosure form, and the flyer from the McNamaras' real estate agent detailing the remodeling done on the home constituted an express warranty, and an implied warranty was given that the remodeling to the home they purchased was performed lawfully and with building permits.

#### Express Warranties

 In evaluating the validity of the "as is" clause in the purchase agreement between the Bynums and Prudential, we have already held, following the holding of *Prudential,* that when a buyer purchases "as is," he is agreeing that there are no express or implied warranties, and that the buyer is relying only on his own examination of the property. *Prudential,* 896 S.W.2d at 164. Accordingly, we hold that the Bynums are not entitled to recover under a claim for breach of an express warranty.[5]

#### Implied Warranties

The Bynums also argue that they should be entitled to proceed on a claim for

---

**5.** In addition to containing an "as is" clause, the Prudential rider agreement in this case provided that the Bynums, as purchasers, agreed that they were not relying on the accuracy of the section 5.008 disclosure forms that were provided to them.

breach of an implied warranty that the remodeling to the home they purchased was performed lawfully and with building permits, and that such a warranty cannot be disclaimed by an "as is" clause.

The Texas Supreme Court has found that a builder of a residential building impliedly warrants to the purchaser that the building has been built in a workman-like manner and is fit for habitation. *Humber v. Morton,* 426 S.W.2d 554, 555 (Tex.1968). This implied warranty of habitability from the builder also extends to subsequent purchasers of the building, but there is no implied warranty from a non-builder seller who sells the building to a subsequent purchaser. *Gupta v. Ritter Homes, Inc.,* 646 S.W.2d 168, 169 (Tex. 1983). The Texas Supreme Court has also found an implied warranty that repair or modification services on existing tangible goods or property will be performed in a good and workman-like manner that, generally, cannot be waived or disclaimed. *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355 (Tex.1987). In *Melody,* the purchaser of a mobile home from Melody Home Manufacturing Co. discovered serious defects in the home. *Id.* at 351. Workmen from Melody Home came out to try to fix the problems, but their attempts to repair the home only caused greater problems. *Id.* In holding that Melody Home could be sued for breach of an implied warranty, the court stated that "we do not require the repairmen to guarantee the results of their work; we only require those who repair or modify existing tangible goods or property to perform those services in a good and workman-like manner." *Id.* at 355.

In this case, neither the McNamaras nor Prudential were builders of the home that was purchased by the Bynums. Accordingly, the Bynums do not have a cause of action against those parties for breach of an implied warranty of habitability. *Gupta,* 646 S.W.2d at 169. Likewise, the Bynums cannot sue the McNamaras or Prudential for breach of an implied warranty that repairs or modifications of existing goods would be performed in a good and workmanlike manner, because it was Kindsfather who remodeled the home, not the McNamaras or Prudential. *See Melody,* 741 S.W.2d at 355 (implied warranty applies to "repairmen" and "those who modify or repair existing tangible goods"). There being no authority of which we are aware that would allow us to expand the scope of the implied warranty created in *Melody,* we decline to do so, and, accordingly, we hold that the Bynums are not entitled to recover against Prudential or the McNamaras for breach of an implied warranty.[6]

We overrule issue two.

## Relief Under Section 5.008 of the Texas Property Code

In issue three, the Bynums argue that, because Prudential has not yet complied with section 5.008 of the Texas Property Code, which requires, among other things, disclosure of whether the seller has knowledge of alterations or repairs that were made without necessary permits, the Bynums are entitled to terminate the purchase transaction and recover all monies paid. *See* Tex. Prop.Code Ann. § 5.008.

We have already determined that there was no evidence that either the McNamar-

---

**6.** Even if we determined that the dealings between the parties in this case should normally give rise to an implied warranty, there would still be an issue as to whether such implied warranties could actually be used as a basis for a claim in light of the Texas Su-

preme Court's holding in *Prudential* that an "as is" clause in the agreement between the buyer and the seller indicates that the buyer purchasing the home is not relying on any express or implied warranties. *Prudential,* 896 S.W.2d at 163–64.

as or Prudential had actual knowledge that the remodeling of the home was done without necessary permits. To the extent that the Bynums are arguing that section 5.008 imposes a continuing obligation on the McNamaras and Prudential to disclose information on matters in the section 5.008 form as the information becomes known to them, the express language of section 5.008 suggests otherwise. Section 5.008(d) provides the following:

> The notice shall be completed to the best of the seller's belief and knowledge *as of the date the notice is completed* and signed by the seller. If the information required by the notice is unknown to the seller, the seller shall indicate that fact on the notice, and by that act is in compliance with this section.

TEX. PROP.CODE ANN. § 5.008(d) (emphasis added). Accordingly, because section 5.008 requires only that the form be completed to the best of the seller's belief at the time the notice is completed and signed, the Bynums' argument that Prudential had an obligation under section 5.008 to provide continuing updates as to matters within the form is without merit. There being no evidence of a violation of section 5.008, the Bynums are not entitled to relief under that section.[7]

We overrule issue three.

### Relief Under the Equitable Doctrine of Rescission

In issue four, the Bynums argue that they are entitled to a rescission of the

purchase of their home because of a mutual, or, alternatively, a unilateral mistake as to the condition of the home. *See Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990) (mutual mistake); *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,* 160 Tex. 617, 335 S.W.2d 371, 372–73 (1960) (unilateral mistake).

One of the grounds for summary judgment raised by Prudential was that rescission was not available to the Bynums because the Bynums had not timely attempted to rescind the contract after moving into the home. *See Winters v. Coward,* 174 S.W. 940, 940–41 (Tex.Civ. App.-San Antonio 1915, no writ). The Bynums have not attempted to negate that ground for summary judgment on appeal. Accordingly, we will affirm the trial court's grant of summary judgment for Prudential as to the Bynums' claim for rescission. *Ellis v. Precision Engine Rebuilders, Inc.,* 68 S.W.3d 894, 898 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (when multiple grounds are asserted in motion for summary judgment, and summary judgment order does not specify the grounds on which summary judgment was rendered, appealing party must, on appeal, negate all grounds asserted in the motion).[8]

We overrule issue four.

### Negligent Misrepresentation and Statutory Fraud

In issue five, the Bynums argue that, even if intentional misrepresentation

---

7. This Court is not holding that a violation of section 5.008 would entitle a purchaser to terminate the purchase contract. Further, to the extent that a section 5.008 disclosure statement could normally be used as a basis for a breach of warranty claim, we have already determined, under the ruling in *Prudential,* that the Bynums, in signing the purchase agreement containing the "as is" clause, agreed that they were relying upon their own inspection of the property, and were not rely-

ing on any express or implied warranties that may have otherwise arisen out of the agreement. *See Prudential,* 896 S.W.2d at 163–64.

8. We do not address the McNamara appellees under this issue because the Bynums contracted only with Prudential, not the McNamaras; thus, there is no contract with the McNamaras that the Bynums would be able to rescind.

cannot be shown, there is a genuine issue of material fact as to whether Prudential and the McNamaras engaged in negligent misrepresentation or fraud under section 27.01 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM.CODE ANN. § 27.01 (Vernon 2002).

Both statutory fraud under section 27.01 and negligent misrepresentation require the plaintiff to prove that he relied on the misrepresentation. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)(1)(B); *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

In this case, because the Bynums' purchase agreement contained a valid "as is" clause, the Bynums cannot prove that they relied on the representations made by Prudential or the McNamaras. *See Prudential*, 896 S.W.2d at 161 ("as is" clause is a "contractual disavowal of reliance"). Accordingly, summary judgment against the Bynums as to those two claims was proper.

We overrule issue five.

### Negligence *Per Se*

■ In issue six, the Bynums argue that the trial court erred in denying their motion for partial summary judgment against the McNamaras on their claim of negligence *per se*.

The Bynums allege that the McNamaras were negligent *per se* in remodeling their home without the necessary permits. Even if we were to assume, which we do not, that the McNamaras were negligent *per se*, the Bynums would still have to prove the element of causation in order to prevail. *See Nixon*, 690 S.W.2d at 549. Generally, in a real estate purchase, when the purchase agreement contains a valid "as is" clause, the purchaser cannot later claim that they were injured by negligent conduct of the seller because the purchaser has agreed that he is making the pur-

chase in reliance only on his own inspection of the property. *Prudential*, 896 S.W.2d at 163 (element of causation in purchaser's negligence claim negated by a valid "as is" clause). Accordingly, because we have determined that the Bynums' purchase agreement contained a valid "as is" clause that negates the element of causation in the Bynums' negligence *per se* claim, we hold that the trial court did not err in denying the Bynums' motion for partial summary judgment on their claim of negligence *per se* against the McNamaras.

We overrule issue six.

### Motion for Continuance

In issue seven, the Bynums argue that the trial court erred in denying the Bynums' motion for continuance.

The Bynums cite no legal authority to support their proposition that the trial court erred in denying their motion for continuance. Accordingly, we hold that the issue has been waived because of inadequate briefing. TEX.R.APP. P. 38.1(h); *see Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994).

We overrule issue seven.

### Conclusion

We affirm the trial court's judgment.