**Opinion issued July 9, 2024**



In The

# Court of Appeals

For The

## First District of Texas

—————————————

### NO. 01-22-00807-CV

—————————————

**TL II APARTMENTS, LLC, Appellant**

**V.**

**A&A MASONRY, INC., Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CV-0681**

---

### MEMORANDUM OPINION

This summary judgment appeal concerns the ability of an apartment complex owner to bring suit on an assigned stucco-work contract and a related written warranty.

In four issues, TL II Apartments, LLC ("TL") contends the trial court erred in (1) concluding that TL lacked standing and capacity to sue A&A Masonry, Inc. ("A&A") on the assigned stucco-work contract and warranty; (2) failing to find that A&A waived its right to challenge TL's capacity; and (3) dismissing all of TL's claims.

We affirm in part and reverse and remand in part.

## Background

This case stems from the construction and sale of the Tuscan Lakes II apartment complex in League City. Tuscan Lakes II was initially owned by Egret Bay Investors, LLC ("Egret Bay") and developed by Davis Development.

In 2013, TX-Morrow Construction, Inc., the general contractor at Tuscan Lakes II, entered into a subcontract agreement ("Stucco Agreement") with A&A to install stucco at Tuscan Lakes II.[1]

In April of 2014, the members of Egret Bay (collectively, "the Egret Bay Sellers")[2] agreed to sell their interests in Egret Bay to KC Venture Group, LLC. The deal included Tuscan Lakes II.

---

[1] A&A did not actually install the stucco. Instead, A&A subcontracted with Juan Nava d/b/a Nava Stone f/k/a Cervantes Stone to install the stucco.

[2] The Purchase and Sale Contract listed the sellers as Beaver Creek Trust, Fred S. Hazel, Lance A. Chernow, Keli J. Hazel, Jeffrey S. Greene, Stephen Michael Davis, and Blake Miguel Davis Trust.

2

The Egret Bay Sellers and KC Venture subsequently signed a Purchase and Sale Contract ("PSC"). They agreed that the closing date would occur after the completion of Tuscan Lakes II and that KC Venture would assign the PSC to an entity owned or controlled by NRES Holdings, LLC ("NRES").

Under the PSC, the Egret Bay Sellers had the authority to convey and assign all Miscellaneous Property Assets to KC Venture and would provide all Property Contracts to KC Venture at closing.

The Miscellaneous Property Assets included all contract rights, claims and causes of action, and warranties relating to the ownership or operation of Tuscan Lakes II. The Property Contracts included all maintenance, service, and utility contracts—as well as similar contracts relating to the ownership, maintenance, construction, repair and/or operation of Tuscan Lakes II.

A few days before closing, and after the stucco-work was completed, A&A provided a ten-year warranty ("Stucco Warranty") to Egret Bay, Davis, and TX-Morrow. A&A warranted that the stucco-work at Tuscan lakes II was free of any defects.

After closing, and pursuant to the PSC, KC Venture executed an Assignment, Acceptance and Notice Agreement ("AANA") that assigned its rights in the PSC (including Tuscan Lakes II) to Midwest QI Services, Inc. Midwest

3

reassigned those rights to NRES via an Assignment and Assumption of Interests ("AAI").

The AAI provides that "[the members of Egret Bay] do[] hereby assign, transfer and set over to [NRES] all of Assignor's right, title and interest in and to the Interest, including, without limitation . . . all right, title and interest of Assignor pursuant to the Organizational Agreement in and to all real and personal property (including the Miscellaneous Property Assets . . .) and every other right, however characterized, now or hereafter held by the Company, . . ."

NRES subsequently conveyed Tuscan Lakes II by special warranty deed to TL. The conveyance included all improvements and "any and all rights, titles, powers, privileges, easements, licenses, right-of-way and interests appurtenant to the Land and the Improvements."

A Bill of Sale and Assignment ("BOSA") was also executed, which assigned to TL all right, title, and interest in and to Tuscan Lakes II—including, as relevant here, property contracts, including "maintenance, service or utility contracts and similar contracts . . . which relate to the ownership, maintenance, construction or repair and/or operation of the Project, but only to the extent transferable." The assignment clause in the BOSA states: "Assignor hereby assigns, sells, and transfers, without recourse or warranty, to Assignee all of Assignor's right, title and interest, if any, in and to all of the Property."

4

Issues with the stucco-work began to appear. A&A initially tried to repair the stucco—but later refused to do so. As a result, TL sued A&A in May of 2018. TL pleaded claims for breach of the Stucco Agreement and Stucco Warranty, breach of express and implied warranty, and negligence.[3] A&A answered with a general denial.

Nearly four years later, A&A filed a supplemental answer. It alleged that some of TL's claims may be barred because A&A's express warranty was not issued to TL, that TL is not a direct party or third-party beneficiary to the warranty, and that A&A and TL are contractual strangers. A&A also asserted that TL lacks standing and capacity to sue because "[TL] is neither a direct party nor third-party beneficiary of the agreement . . . between [A&A] and TX Morrow."

A&A moved for traditional summary judgment. It asserted that TL could not sue A&A because (1) TL did not own the property at the time of the alleged injury and (2) TL is a subsequent purchaser of the property. A&A attached and relied on the PSC, the AANA, and the AAI. A&A also argued that because of an "as is" clause in the contract, TL could not assert any tort causes of action against A&A.

---

[3]    TL also filed a third-party petition against the supplier of the stucco, AHI, and against the installer of the stucco, Nava. AHI then filed a fourth-party petition against the general contractor, TX-Morrow. TX-Morrow then filed a crossclaim against A&A.

In response, TL argued that all rights, remedies, and interests to Tuscan Lakes II were transferred and assigned to TL under the PSC, the AANA, the AAI, the BOSA, and the special warranty deed. TL further argued that A&A failed to establish that the injuries occurred before TL became owner and that the PSC made an exception to the "as is" clause for representations and warranties.

TL filed a cross motion for partial summary judgment on liability only. TL relied on the Stucco Agreement to support its status as a third-party beneficiary as the owner of Tuscan Lakes II. TL asserted that A&A breached the Stucco Agreement by improperly installing and supervising the installation of the stucco system at Tuscan Lakes II and by refusing to remedy and cure the stucco issues caused by its improper installation.[4]

A&A responded by, again, arguing that TL does not have a right to sue under the Stucco Agreement or Stucco Warranty. According to A&A, there was no express assignment of any potential claims to any subsequent purchaser. And, while the BOSA conveyed right, title, and interest to (1) property contracts, (2) leases, (3) permits, and (4) fixtures and tangible personal property—the Stucco Agreement and Stucco Warranty are not property contracts as defined in the BOSA.

---

[4]     TL also moved for summary judgment on its breach of warranty and negligence causes of action.

After two hearings, the trial court signed two orders. First, it granted A&A's traditional motion for summary judgment and dismissed TL's claims with prejudice. Second, it denied TL's motion for partial summary judgment on liability only but did not consider the merits of TL's motion. Instead, the trial court's order indicates that it denied TL's summary judgment motion and dismissed all of TL's claims "because TL . . . does not have standing or capacity to bring its claims"—the same basis on which it granted A&A's summary judgment motion.

TL now appeals the grant of A&A's motion for summary judgment and the denial of its summary judgment motion. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007) ("Although the denial of summary judgment is normally not appealable, we may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other.").

## Capacity

In its first issue, TL argues that the trial court erroneously granted summary judgment in favor of A&A because, as an assignee, TL had the capacity to enforce the Stucco Agreement and Stucco Warranty.

7

**A.    Standard of Review**

We review a trial court's summary judgment de novo. *Id*.   A traditional motion for summary judgment is properly granted when the movant establishes that no genuine issues of material fact exist, and it is entitled to judgment as a matter of law on the grounds expressly set forth in the motion. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005).  We must take evidence favorable to the nonmovant as true and indulge every reasonable inference from the evidence in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

When a defendant moves for traditional summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense. *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr*., 586 S.W.3d 37, 47 (Tex. App.—Houston [1st Dist.] 2019, no pet.).  If the movant satisfies its burden, the burden shifts to the nonmovant to raise a fact issue precluding summary judgment. *Lujan v. Navistar, Inc*., 555 S.W.3d 79, 84 (Tex. 2018).  A fact issue exists if more than a scintilla of evidence establishes the existence of the challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*. at 601 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

## B.    Analysis

TL initially argues that A&A's summary judgment motion challenged only TL's capacity to sue—and not standing. We agree.

The gravamen of A&A's arguments below concerned TL's purported lack of privity of contract with A&A. That is a challenge to capacity, not standing.[5] *See Elness Swenson Graham Architects, Inc. v. RLJ II–C Austin Air, LP*, 520 S.W.3d 145, 153 (Tex. App.—Austin 2017, pet. denied); *Schlein v. Griffin*, No. 01-14-00799-CV, 2016 WL 1456193, at *5 (Tex. App.—Houston [1st Dist.] Apr. 12, 2016, pet. denied) (mem. op.) (stating that "Texas courts have held that a

---

[5]    Because we interpret A&A's argument as a challenge to capacity, it is unnecessary to address TL's standing. Nevertheless, TL presented evidence below that it was aggrieved as the owner of Tuscan Lakes II when A&A refused to repair the stucco at Tuscan Lakes II. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005) (party has standing "when it is personally aggrieved" (internal quotations omitted)). TL has standing to bring this suit.

'challenge to a party's privity of contract is a challenge to capacity, not standing'") (quoting *John C. Flood of DC, Inc. v. SuperMedia, L.L.C*., 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied)).

"Capacity is a party's legal authority to go into court to prosecute or defend a suit." *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 249–50 (Tex. App.— Houston [1st Dist.] 1995, writ denied). "As a general rule, the benefits and burdens of a contract belong solely to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *House v. Hous. Waterworks Co*., 31 S.W. 179, 179 (Tex. 1895)).

Privity is established by proof that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff. *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 284–85 (Tex. App.—Houston [1st Dist.] 2013, no pet.). To recover on an assigned cause of action, the party claiming that the assignment occurred must show the existence of a cause of action capable of being assigned and that the cause of action was in fact assigned to that party. *Elness*, 520 S.W.3d at 153–54. An assignment is a manifestation by the owner of a right of his intention to transfer such right to the assignee. *Brown*, 414 S.W.3d at 285. In Texas, assignments of a contract or an

express warranty are governed by contract law. *Id.*; *see also Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008).

When we construe a written contract, our primary concern is to determine the parties' true intent as expressed in the contract. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011); *Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 695 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). If the contract is so worded that it can be given a definite or certain legal meaning, then it may be construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Tellepsen Builders*, 625 S.W.3d at 696. Unless the agreement shows that the parties used a term in a technical or different sense, we give the terms their plain, ordinary, and generally accepted meaning. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together—even if they were executed at different times and do not expressly refer to one another. *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999). This rule is a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily. *Id.*

Here, both sides agree that Egret Bay originally owned Tuscan Lakes II and that, after multiple transactions, TL became the eventual owner of Tuscan Lakes II.

11

The parties also agree that the relevant documents include: (1) the Stucco Agreement, (2) the PSC, (3) the Stucco Warranty, (4) the AANA, (5) the AAI, and (6) the BOSA.

But the parties diverge on two key points. *First*, does section 1.1.20 of the PSC, which describes Miscellaneous Property Assets, carve out from assignment any claims or warranties against subcontractors such as A&A? And *second*, does section 1 of the BOSA assign the Stucco Agreement or Stucco Warranty to TL? We address each point in turn.

### 1. Purchase and Sale Contract

PSC section 1.1.20 defines "Miscellaneous Property Assets" as,

> [A]ll contract rights, . . . claims and causes of actions, . . . warranties, . . . and other items of intangible personal property relating to the ownership or operation of the Property and owned by [Egret Bay], but only to the extent transferable, [specifically excluding the general contractor construction contract (the "<u>Construction Contract</u>") and all claims, rights, remedies and causes of action against or through the contractors under the Construction Contract], *but specifically including all warranties* and guaranties (express or implied) (other than warranties and guaranties contained in the Construction Contract) in connection with or arising out of the design or construction of any of the Improvements or the performance of any of the work, under or pursuant to the Construction Contract or otherwise, or issued in connection with or arising out of the fabrication, purchase, installation or repair of any fixtures, equipment or other personal property attached to, located in or used in connection with the Property.

PSC section 1.1.24 defines "Property" as "the Land and Improvements and all rights of [Egret Bay] relating to the Land and the Improvements . . . together with all Fixtures and Tangible Personal Property, all Property Contracts and Leases, Permits and the *Miscellaneous Property Assets*." (Emphasis added.)

And section 1.1.25 defines "Property Contracts" as:

> [A]ll purchase orders, maintenance, service, or utility contracts and similar contracts, excluding Leases, which relate to the ownership, maintenance, construction or repair and/or operation of the Property. . . . and shall also mean any third party maintenance, service, marketing or other contract relating to the Property which Property Owner is obligated to cause Property Owner's transferee or assign to assume or execute upon Purchaser's purchase of the Property.

Furthermore, within the PSC, the Egret Bay Sellers represented that they had "all necessary right and authority to convey and assign to [KC Venture] all Miscellaneous Property Assets, Fixtures and Personal Property required to be conveyed and assigned to [KC Venture] hereunder."

A&A does not dispute that the Miscellaneous Property Assets were assigned to TL. Instead, it contends that TL could not be assigned claims against A&A because the PSC's Miscellaneous Property Assets provision carved out claims against the general contractor, TX Morrow, and itself, as a subcontractor. A&A argues that the carve out sentence―"specifically excluding the *general contractor* construction contract (the "Construction Contract") and all claims, rights, remedies and causes of action against or through the *contractors* under the Construction

13

Contract"—initially uses the term "general contractor," a defined term, but then refers to "contractors," which is undefined. (Emphasis added.)

According to A&A, because the Miscellaneous Property Assets provision uses the undefined term "contractors," we should apply an ordinary meaning to that term which would necessarily include general contractors and subcontractors. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). A&A asserts that such a reading of Miscellaneous Property Assets excludes claims against subcontractors, like A&A, from being assigned.

TL argues that "the exclusion of rights against the general contractor or arising under the general contract has nothing to do with direct claims against subcontractor A&A based on the [Stucco Agreement] or [Stucco Warranty]. Both of those documents grant direct causes of action to the property owner against A&A." And the Miscellaneous Property Assets specifically include warranties.

Even assuming that A&A has correctly construed the term "contractors" to include both general contractors and subcontractors, A&A's resulting interpretation of the provision is untenable. It ignores the beginning of the sentence which states, "excluding the general contractor construction contract (the "Construction Contract")" and ignores the next four words after "contractors"— "under the Construction Contract." We must read this contract language together and in context, not in isolation from each other. *See Hysaw v. Dawkins*, 483

S.W.3d 1, 13 (Tex. 2016). Indeed, we may not rewrite the Miscellaneous Property Assets provision or add to its language under the guise of interpreting it. *See Maxey v. Maxey*, 617 S.W.3d 207, 221 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Moreover, the Construction Contract which is referenced in this part of the Miscellaneous Property Assets provision was never produced and thus not before the trial court when it granted summary judgment. As a result, A&A could not (and did not) establish as a matter of law that TL lacked capacity to sue based on any carve out of assigned claims under the Construction Contract. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (movant has burden to submit sufficient evidence to establish that it is entitled to judgment as a matter of law; where movant fails to do so, the burden does not shift to the non-movant and the non-movant need not respond or present any evidence).[6]

Additionally, A&A's interpretation of this language in the Miscellaneous Property Assets provision (as TL's excluding claims against A&A) would conflict

---

[6]     *See, e.g.*, *Curlee Mfg. Co. v. Charter Oak Fire Ins. Co.*, No. B14-92-01298-CV, 1994 WL 222215, at *5 (Tex. App.—Houston [14th Dist.] May 26, 1994, writ denied) (not designated for publication) (where only portion of insurance policy at issue was in record, insurer's obligation to reimburse insured could not be determined and insurer did not meet its summary judgment burden to prove as matter of law that insured had no right to reimbursement); *David Evans Contracting, Inc. v. Gen. Acc. Ins. Co. of Am.*, No. C14-89-00999-CV, 1991 WL 404, at *6 (Tex. App.—Houston [14th Dist.] Jan. 3, 1991, writ denied) (not designated for publication) (noting that without construction contract insurance requirement page, court was unable to determine whether appellees conclusively proved that insurance coverage met contract requirements as matter of law).

with yet other language in the provision that states warranties are specifically included—except for any warranties in the Construction Contract which was not before the trial court.[7] And that is an interpretation we must avoid. Again, we must give effect to all of the language so that none is rendered meaningless. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

Based on all of these reasons, we conclude that A&A did not establish as a matter of law that the Miscellaneous Property Assets provision in the PSC carves out any claims or warranties against it.

### 2. Bill of Sale and Assignment

TL argues that it was assigned Property Contracts under the BOSA—which includes the Stucco Contract and Stucco Warranty. The BOSA defines Property Contracts as: "All of Assignor's rights and interests in and to . . . service or utility contracts and similar contracts, . . . which relate to the ownership, maintenance,

---

[7] The Miscellaneous Property Assets provision of the PSC provides,

> [*B*]*ut specifically including all warranties and guaranties (*express or implied) (<u>other than warranties and guaranties contained in the Construction Contract</u>) in connection with or arising out of the design or construction of any the Improvements or the performance of any of the work, under or pursuant to the Construction Contract or otherwise, or issued in connection with or arising out of the fabrication, purchase, installation or repair of any fixtures, equipment or other personal property attached to, located in or used in connection with the Property. (Emphasis added).

16

construction or repair and/or operation of the Project, but only to the extent transferable."

A&A asserts that the phrase "service or utility contracts" should be narrowly construed to mean "contracts to provide maintenance on a consumer product for a specified term, such as a copy machine, an ice maker or some other similar consumer product." But, like A&A's earlier argument, that disregards the rest of the language in the definition which states, "and similar contracts, . . . which relate to the ownership, maintenance, construction or repair and/or operation of the Project, but only to the extent transferable." *See Hysaw*, 483 S.W.3d at 13; *J.M. Davidson*, 128 S.W.3d at 229. And A&A has not provided us with any argument or authority as to why the Stucco Contract and Stucco Warranty are not "similar contracts" relating to ownership, maintenance, construction or repair of the project.

Accordingly, we conclude that A&A did not establish as a matter of law that the Stucco Agreement and Stucco Warranty are not "similar contracts . . . which relate to the ownership, maintenance, construction or repair and/or operation of the Project."[8]

---

[8] A&A states without authority that the Stucco Warranty was not transferable. But A&A provides no authority for that proposition. Instead, Texas law provides that contracts are freely assignable unless there is language in the contract to the contrary. Because an express warranty sounds in contract, the same is true for an express warranty—which we have here. *See Vaughn v. DAP Fin. Servs., Inc.*, 982 S.W.2d 1, 7 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (stating that "[unless otherwise stipulated, all contracts are freely assignable."); *see also Med. City*

17

Next, A&A primarily relies on *Exxon Corp. v. Emerald Oil & Gas Company* for the proposition that TL, as a subsequent purchaser, lacked the right to sue because the Egret Bay Sellers did not make an express assignment. *See* 331 S.W.3d 419 (Tex. 2010). In *Emerald Oil*, the Texas Supreme Court addressed whether "section 85.321 of the Texas Natural Resources Code allows a subsequent mineral lessee to maintain a cause of action against a prior lessee for damages to the mineral interest that occurred prior to the time the subsequent lessee obtained its interest." *Id*. at 420.

Unlike *Emerald Oil*, TL was not a "mere subsequent purchaser." Rather, TL was assigned Miscellaneous Property Assets—including the Stucco Agreement and the Stucco Warranty; in addition to Property Contracts as defined in the BOSA.[9] *See Emerald Oil*, 331 S.W.3d at 424.

---

*Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 58 (Tex. 2008) (holding that "a claim based on an express warranty is, in essence, a contract action"); *Rollingwood Trust No. 10 v. Schuhmann*, 984 S.W.2d 312, 315 (Tex. App.—Austin 1998, no pet.) (stating that in absence of contrary provision, contract may be assigned). A&A does not point to any provision in the express Stucco Warranty, or in any related contract, that precludes assignment of the express warranty.

[9] A&A also relies on *Ceramic Tile International, Inc. v. Balusek* to support its argument that TL was not an assignee. 137 S.W.3d 722, 724–25 (Tex. App.—San Antonio 2004, no pet.). *Balusek* likewise does not support A&A's argument because in that case, the court found that the assignee never offered the assignment in evidence during trial. Unlike *Balusek*, TL presented summary judgment evidence of the assignment.

18

Therefore, for all of these reasons, we hold that the trial court erred in granting summary judgment based on A&A's contention that TL lacked capacity to sue. We sustain TL's first issue.[10]

### Summary Judgment on TL's Negligence Claim

A&A also argued in its summary judgment motion that an "as is" clause in the PSC prevented TL from asserting any tort claims. Specifically, A&A maintained that the PSC's "as is" clause "negates the element of causation necessary to recover on claims regarding the physical condition of the property" and that the "as is" clause "bars [TL's] ability to assert any tort cause of action against A&A, regarding the condition of the Property, as a negligence claim requires causation."

In general, a valid "as is" agreement negates the element of causation necessary to recover on claims regarding the physical condition of the property. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995).[11] By agreeing to purchase the property "as is," the buyer agrees to make his own assessment of the bargain and to accept the risk that he may be

---

[10] Because we conclude that the trial court erred in granting A&A's motion for summary judgment in part, it is unnecessary for this Court to determine TL's second, third, and fourth issues. *See* TEX. R. APP. P. 47.1.

[11] *See Gym–N–I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) (holding that "as is" clause in commercial lease waives implied warranty of suitability); *Bynum v. Prudential Residential Servs., Ltd. P'ship*, 129 S.W.3d 781, 788 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (applying "as is" clause in sale agreement for remodeled home to bar claims relating to remodeling work).

19

wrong. *Bynum*, 129 S.W.3d at 788. The seller gives no assurances, express or implied, concerning the value or condition of the thing sold, and the buyer chooses to rely on his own determination of the value and condition of the purchase, thus eliminating the possibility that the seller's conduct will cause him damage. *Id*. The Texas Supreme Court has instructed that an "as is" clause will generally defeat the element of causation in DTPA, fraud, and negligence claims. *Prudential*, 896 S.W.2d at 161.

Here, TL had the summary judgment burden as the non-movant of adducing more than a scintilla of evidence raising an issue of fact as to the enforceability of the "as is" clause. *See Bynum*, 129 S.W.3d at 788–94; *accord Santibanez v. Diron*, No. 01-16-00231-CV, 2017 WL 343609, at *3 (Tex. App.—Houston [1st Dist.] Jan. 24, 2017, no pet.) (mem. op.). Instead, TL just broadly asserted that the "as is" clause does not carve out any claims or causes of action against A&A. By failing to present any argument below that the as-is clause was not enforceable against its negligence claim, TL has not overcome its burden as a matter of law.

Accordingly, to the extent that the trial court granted summary judgment on TL's negligence claim, we hold that the trial court did not err.

## Conclusion

Based on our review of the entire record and application of the governing standard of review, we reverse the trial court's granting of A&A's Traditional Motion for Summary Judgment on all claims—except for TL's negligence claim which we affirm only to that extent.

Because A&A did not establish that TL lacks capacity to sue as a matter of law, we further reverse that portion of the trial court's order on TL's Motion for Partial Summary Judgment Against Defendant A&A Masonry, Inc. on Liability Only that dismissed all of TL's claims—except for TL's negligence claim, which as stated above, we affirm only to that extent. We additionally remand for further proceedings consistent with this opinion.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Landau and Farris.