Jon STACK and Sarah Stack, Appellants,

v.

Marc H. RICHMAN and Ann B. Richman, Appellees.

No. 05–07–00190–CV.

Court of Appeals of Texas, Dallas.

March 16, 2009.

Rehearing Overruled July 14, 2009.

William Scott Hastings, Erik Marshall, Locke, Liddell & Sapp, L.L.P., Dallas, Darin Michael Klemchuk, Mark Taylor, Cash Klemchuk Powers Taylor LLP, Dallas, for Appellants.

J. Kent Newsom, Newsom, Terry & Newsom, L.L.P., Clint L. Taylor, Thad D. Spalding, Daniel D. Tostrud, Hermes Sargent Bates, L.L.P., Robert A. Miller, Prager & Miller, P.C., Dallas, for Appellees.

Before Justices BRIDGES, FRANCIS, and WHITTINGTON.[1]

## OPINION

Opinion by Justice BRIDGES.

Appellants Jon and Sarah Stack, real property buyers, sued appellees Marc and Ann Richman as sellers of real property.[2] In their lawsuit, the Stacks alleged the Richmans misrepresented the size of the tract conveyed and asserted the following causes of action: (1) statutory fraud in a real estate transaction, (2) common law

---

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment. This appeal was submitted to the panel before Justice Whittington retired on December 31, 2008.

2. Although parties to the underlying lawsuit, Darlene Harrison, real estate agent for the Richmans, and NRT Texas, Inc., d/b/a Coldwell Banker Residential Brokerage are not parties to this appeal.

fraud, (3) negligent misrepresentation, and (4) DTPA violations. The Richmans filed a traditional motion for summary judgment, and the trial court entered a take-nothing judgment in favor of the Richmans on all claims. In addition, the trial court granted the Richmans' second motion for summary judgment on their counterclaim for attorneys' fees. Because we believe questions of fact remain, we reverse and remand for further proceedings consistent with this opinion.

## Background

The Richmans purchased the Dallas property at issue from the Ellises in 1992. Eva Kaplan represented the Ellises as their agent and prepared a marketing brochure which accurately described the lot size as only 1.16 acres.[3] The marketing brochure is included in the summary judgment record. Kaplan testified[4] that she placed those brochures on the dining room table of the home, which was situated just to the right of the front door of the home so that prospective buyers could take a brochure with them when they left. Kaplan testified that the brochures were available at the home when the Richmans visited the home as prospective buyers; however, the Richmans testified that they did not see the brochure and claimed that they were unaware of the lot size when they purchased the home.

In 2001, the Richmans listed their Dallas property for sale with Bobbie Horwitz, a real estate agent. Having not sold their home after some time, in 2002, the Richmans decided to employ the services of another agent, Darlene Harrison. Both

Horwitz and Harrison prepared marketing materials which described the size of the property's lot as 1.64 acres. The brochure provided by Horwitz contained the following disclaimer: "The information contained herein is *furnished by the owner to the best of his knowledge,* but is subject to verification by purchaser, and the agent assumes no responsibility for the correctness thereof . . . ." (emphasis added). Two of the marketing brochures prepared by Harrison also contained the following disclaimer: "All information contained herein is *supplied by the seller to the best of his/her knowledge,* but is subject to verification by the purchaser, and the broker assumes no responsibility for the correctness thereof . . . ." (emphasis added). Three other brochures prepared by Harrison stated, "The information contained herein is *offered by the owner to the best of his knowledge,* but is subject to verification by the purchaser . . . ." (emphasis added). Two of Harrison's brochures also included the following: *"BUYER TO VERIFY PRIOR TO CLOSING & FUNDING. ALL MEASUREMENTS ARE APPROXIMATE."* (emphasis in original). However, this disclaimer was listed only in connection with the square footage of the home and not the size of the lot.[5] The majority of the brochures prepared by Horwitz and Harrison that are before us contained the notation "tax" or "per tax rolls" next to the 1.64 acres listed as the lot size. However, one of the brochures prepared by Harrison did not contain that notation and, instead, described the tract as "approx. 1.6 acres facing Strait Lane" without qualification.

---

**3.** The parties do not dispute the actual size of the lot is only 1.165 acres.

**4.** The testimony referenced throughout this opinion refers to deposition testimony attached to the motion for summary judgment and response.

**5.** These brochures contain two asterisks by the square footage of the home. At the bottom of the brochures and next to the two asterisks is the referenced disclaimer. The asterisks do not appear beside the lot size listed as "335 × 214, 1.64 Acres/tax."

After viewing the property, the Stacks were interested in purchasing it. The Stacks' real estate agent, Arlene Balady, requested that Harrison confirm the property's lot size with the Richmans. Balady testified that Harrison reported to her that the Richmans had confirmed that the lot size of 1.64 acres was correct. Balady also testified that she printed off the multiple listing service or MLS information on the property in December 2002. That print-out is included in the appellate record and lists the acreage as 1.64 acres. However, the same print-out also states, "Information herein deemed reliable but not guaranteed."

Prior to the offer to purchase the property, the Stacks and their architect were provided a copy of the survey used when the Richmans purchased the home in 1992. Sarah Stack testified that she opted not to obtain a new survey of the property prior to closing on the property because Balady had recommended using the 1992 survey offered by Marc Richman at closing. The 1992 survey did not specify the acreage of the lot. The survey, which is part of the appellate record, reflects the tract was irregular in shape. In addition, Marc Richman, Harrison, Balady, and Sarah Stack admitted they knew the tract was not a rectangle, but was irregular in shape. Mr. Richman testified that he believed the property to be 1.64 acres based upon his review of the Dallas Central Appraisal District or DCAD records on-line multiple times. However, DCAD officials testified that the DCAD records never indicated the property was 1.64 acres. Horwitz also testified that Mr. Richman was surprised when she first told him the lot was so large, i.e. 1.64 acres.

Harrison testified that she did not obtain the acreage information from the Richmans, but from the MLS. She stated that MLS extracts such data from the taxing authority—in this case, DCAD. For the property at issue, a June 2003 print-out of DCAD's online public residential account detail listed the lot size as 335 feet by 214 feet. Included in the appellate record are official DCAD records which only state the length of the front of the property as 335 feet for the years 1999, 2001, and 2002. Whereas for the years 2003, 2004, and 2005, the official record states the front is 335 feet and the depth of the tract is 214 feet. All of the official DCAD records before us list the total acreage of the tract as "0."

Approximately one month prior to closing, Sarah Stack and Balady visited the City's plat map and deed restrictions office to investigate the property. As a part of the investigation, Sarah Stack discovered that the tract at issue consisted of two lots, each of which she believed would support its own house. Prior to their purchase of the property, the Stacks considered dividing the tract into its two original, smaller lots and then selling one or both of them. The total acreage of the lot was not listed on the plat map viewed by Balady and Sarah Stack, but Sarah Stack testified that she believed the two lots that made up the tract to be .8 acres each, consistent with the 1.64 total acreage represented to her.

The Stacks, allegedly relying on the representation of the lot size being 1.64 acres, offered to purchase the property in June of 2003 for $1 million. The Richmans accepted the offer and closed the transaction the same month. When the Stacks were informed the title company could use the existing 1992 survey at closing, the Stacks opted not to have their own survey conducted prior to closing.

In July of 2003, the Stacks hired a surveyor to determine the exact size of the property. With this survey, the Stacks discovered the property covered only 1.165 acres. When the discrepancy was discov-

ered, the Stacks contacted Balady who then contacted Harrison. The Stacks later tore down the home purchased from the Richmans and divided the tract into two lots. Ultimately, the Stacks sold both lots at a loss for $725,000 and brought this lawsuit against the Richmans for (1) statutory fraud in a real estate transaction, (2) common law fraud, (3) negligent misrepresentation, and (4) DTPA violations.

During the course of the litigation, the Stacks attempted to obtain the Richmans' records relating to their purchase of the property in 1992. The Stacks contend they sought the documents so that they could more ably determine the extent of the Richmans' knowledge with regard to the lot size during their purchase of the property in 1992. However, by late 2003 and allegedly after he was aware of the discrepancy in the property's lot size,[6] Marc Richman destroyed the documents relating to the 1992 purchase of the property. Although Marc Richman explained the destruction of the documents was part of the house-cleaning associated with their move from the property in 2003, he admitted that the destroyed documents from the 1992 purchase of the property were actually kept in his off-site business office and not his home.

The Richmans filed a traditional motion for summary judgment on the following grounds: (1) no misrepresentation was made by the Richmans; (2) the Richmans cannot be liable for a misrepresentation made by their agent under Texas Occupations Code section 1101.805(d); (3) the DTPA bars an award of damages to the Stacks because the Richmans obtained information regarding the lot's size from of-

ficial government records; (4) the Stacks did not justifiably rely on any misrepresentation; and (5) the "as is" clause in the contract of sale precludes the Stacks from bringing their claims. The trial court entered a take-nothing judgment in favor of the Richmans on all claims. In addition, the trial court granted the Richmans' second motion for summary judgment on their counterclaim for attorneys' fees. This appeal ensued.

## Standard of Review

We review a summary judgment de novo to determine whether a party has established its right to summary judgment as a matter of law. *See Dallas Centr. Appraisal Dist. v. Cunningham*, 161 S.W.3d 293, 295 (Tex.App.-Dallas 2005, no pet.). A party moving for a traditional summary judgment must show no material fact issue exists and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Nixon*, 690 S.W.2d at 548–49. All evidence and any reasonable inferences must be viewed in the light most favorable to the non-movant. *Id.*

## Discussion

In their first issue, the Stacks contend summary judgment was not proper because: (1) the Richmans made affirmative misrepresentations regarding the size of the property; (2) section 1101.805(d) of the Texas Occupations Code does not apply because the Richmans knew they were

---

6. The record reflects that the discrepancy was discovered by the Stacks in July 2003. The Stacks then notified Balady of the discrepancy. Balady testified she then informed Harrison of the discrepancy and asked Harrison to

notify the Richmans. Balady testified that Harrison later indicated that Marc Richman stated "it was a good price for the house anyway."

making false representations but participated in making the false misrepresentations anyway; (3) section 17.506(a) of the Texas Business and Commerce code does not apply to bar the Stacks' DTPA claim because the false information from the Richmans was not obtained from government records and because the Richmans knew the information was false; (4) the Stacks relied upon the Richmans' false representations; and (5) the "as is" clause does not negate the Richmans' liability for the knowing misrepresentation of the property's size.

■ We first turn to whether the Richmans made an affirmative misrepresentation regarding the size of the property. The lot size stated in the marketing brochures prepared by Horwitz and Harrison was incorrect. The marketing brochure provided by Horwitz stated the information was "furnished by the owner." Two of the brochures prepared by Harrison stated the information was "supplied by the seller" and another stated the information was "offered by the owner." Furthermore, Balady testified Harrison reported to her that the Richmans had confirmed the lot size of 1.64 acres was correct. Therefore, based on our review of the record in the light most favorable to the Stacks, the summary judgment evidence presents a fact question as to whether the Richmans made a misrepresentation. *Nixon*, 690 S.W.2d at 548–49. Because fact questions remain as to whether there was a misrepresentation or a knowing misrepresentation by the Richmans, the Richmans are not entitled to summary judgment as a matter of law. Tex.R. Civ. P. 166a(c).

■ Next, the Richmans raise Texas Occupations Code section 1101.805 as a defense and contend they cannot be liable for a misrepresentation made by their agent. Even if we agreed with the Rich-

mans' argument that this section can be used as a defense and the misrepresentations, if any, were made by the Richmans' agent to the Stacks and not by them, summary judgment is not proper when fact questions remain as to whether the Richmans (1) knew of the falsity of the misrepresentation or concealment; and (2) failed to disclose the party's knowledge of the falsity of the misrepresentation or concealment. Tex. Occ.Code Ann. § 1101.805(d) (Vernon 2004). As noted above, the record presents conflicting evidence with regard to the Richmans' knowledge of the actual size of the property when they sold it to the Stacks. There is some evidence the false information contained in the marketing brochures was supplied by the Richmans and they incorrectly confirmed the lot size was 1.64 acres to Harrison. Horwitz testified Marc Richman was surprised when she told him the lot was 1.64 acres. Furthermore, Marc Richman admitted he destroyed the documents, which were sought by the Stacks, relating to their 1992 purchase of the property. If the Richmans were aware of the true size of the property and misrepresented the size of the property to their agent, the Richmans are liable for their agent's misrepresentation to the Stacks. *Id.* Because fact questions remain as to the Richmans' knowledge, summary judgment is not proper. Tex.R. Civ. P. 166a(c).

Third, in their summary judgment motion, the Richmans contend the DTPA bars an award of damages to the Stacks because the Richmans obtained information regarding the lot's size from official government records. However, DCAD officials testified the DCAD records never indicated the property was 1.64 acres and all of the official DCAD records in the summary judgment record list the total acreage of the tract as "0." Furthermore, the Richmans can rely upon the DTPA to

bar the Stacks' claims only if they "did not know or could not reasonably have known of the falsity or inaccuracy of the information." TEX. BUS. & COM.CODE ANN. § 17.506(a) (Vernon 2002). Again, because fact questions remain as to the Richmans' knowledge of the true size of the property, summary judgment cannot stand in favor of the Richmans. Tex.R. Civ. P. 166a(c).

Next, the Richmans contend the Stacks did not justifiably rely on any misrepresentation because: (1) any representation regarding the size of the property was accompanied by an "express disclaimer" which advised the Stacks that the information was not guaranteed; (2) the Stacks conducted their own investigation regarding the size of the lot, including being provided a survey of the property prior to closing; and (3) the deed restrictions, which restricted the property to no more than "one private dwelling house" and occupation of the premises to "one family only," independently prevented the Stacks from their intended purpose—buying the house "to divide and sell a portion of the property and to occupy the remaining portion as their personal residence."

First, with regard to the Richmans' arguments on lack of reliance, the evidence in the summary judgment record demonstrates a disclaimer did not appear with every representation of the lot's size. For example, two of Harrison's brochures contained a disclaimer in connection with the square footage of the home and not the size of the lot. Thus, even if we agreed a disclaimer would eliminate liability for false information on the part of the seller, there remains a fact question as to whether a disclaimer accompanied every representation of the lot's size. Next, the Richmans argue the Stack's investigation prevents them from stating they relied on any misrepresentations. However, the "investigation" conducted by the Stacks

did not reveal the true acreage of the property. The total acreage of the lot was not listed on the plat map viewed by Balady and Sarah Stack. Furthermore, the acreage was not listed on the 1992 survey provided by the Richmans. Finally, we fail to see how the Stacks' intended purpose to split the lot is relevant to the issue of whether they relied upon the alleged misrepresentation of the lot's size when purchasing the property. The Stacks contend, when they made their offer to purchase the property, they relied upon the Richmans' representations of the lot size being 1.64 acres, and thus presumed the two lots that made up the tract to be .8 acres each. Based on our review of the record in the light most favorable to the Stacks, the summary judgment evidence presents a fact question as to whether the Stacks relied upon the Richmans' alleged misrepresentations. *Nixon*, 690 S.W.2d at 548–49. Because there is a fact question as to whether the Stacks justifiably relied upon the alleged misrepresentations, the Richmans are not entitled to summary judgment as a matter of law. Tex.R. Civ. P. 166a(c).

Finally, the Richman's did not conclusively establish the "as is" clause negates causation. The "as is" clause in the sales contract provides: "ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts the Property in its present condition . . . ." (emphasis in original). A buyer is not bound by an "as is" clause that is the product of fraudulent representation or concealment of information by the seller. *Bynum v. Prudential Residential Srvcs., Ltd. Partnership*, 129 S.W.3d 781, 788 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). *See also Prudential Ins. Co. v. Jefferson Assoc., Ltd.*, 896 S.W.2d 156, 162 (Tex.1995) ("[A] buyer is not bound by agreement to purchase something 'as is' that he is induced to make because of a

fraudulent representation or concealment of information by the seller.") The Stacks allege they relied upon the representation of the lot's size when making their offer to purchase the property from the Richmans. Because fact questions remain with regard to the Richman's knowledge and representations regarding the property's actual size, the Richmans cannot rely upon the "as is" clause to obtain summary judgment against the Stacks. Tex.R. Civ. P. 166a(c).

Thus, after reviewing the record in the light most favorable to the Stacks, we conclude the trial judge erred in granting summary judgment in favor of the Richmans as a matter of law, and we sustain appellant's first issue. *See* Tex.R. Civ. P. 166a(c); *Nixon,* 690 S.W.2d at 548–49.

█ In their second issue, the Stacks contend the trial court erred when it entered summary judgment on the Richmans' counterclaim for attorneys' fees, costs, and expenses. The Richmans filed their second motion for summary judgment on their counterclaim following the trial court's grant of the take-nothing summary judgment in their favor. In the Richmans' motion for summary judgment on their counterclaim, the Richmans moved for fees because they were the "prevailing parties" and, thus, were entitled to their fees. Due to our disposition of the Stacks' first issue on appeal, the Richmans are no longer the "prevailing parties" and, thus, are not entitled to their fees on that basis. *See City of Amarillo v. Glick,* 991 S.W.2d 14, 17 (Tex.App.-Amarillo 1997, pet. denied) (defining a "prevailing party"). We, therefore, sustain the Stacks' second issue.

Having sustained both of the Stacks' issues, we reverse the trial court's take-nothing summary judgment and reverse the trial court's summary judgment concerning attorney's fees. We remand for further proceedings consistent with this opinion.