**Curt WELWOOD, Appellant**

v.

**CYPRESS CREEK ESTATES, INC. d/b/a Legacy Lakes Joint Venture and Blackard Developments, Inc., Appellees.**

**No. 05–04–01805–CV.**

Court of Appeals of Texas, Dallas.

Oct. 26, 2006.

James A. Pikl, James A. Pikl, P.C., McKinney, for appellant.

R. Wayne Gordon, Daniel Lee Gus, Touchstone, Bernays, Johnston, Beall, Smith & Stol, Stephanie M. Daughdrill, Oscar John Zevallos, Anthony Jack, Dallas, for appellees.

Before Justices MOSELEY, BRIDGES, and O'NEILL.

## OPINION

Opinion by Justice MOSELEY.

Curt Welwood sued Cypress Creek Estates, Inc. d/b/a Legacy Lakes Joint Venture (Legacy Lakes) and Blackard Devel-

opments, Inc. (BDI) for negligence, breach of an implied warranty of good and workmanlike development services, and DTPA violations arising from damage to Welwood's personal property at his residence allegedly caused when the slope behind the house failed. In six issues, Welwood contends the trial court erred in granting appellees' traditional and no evidence motion for summary judgment. For the reasons that follow, we resolve Welwood's issues against him and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellees developed and marketed custom home lots in the Lakes of Legacy subdivision in Frisco. Welwood alleged in his petition that Legacy Lakes and DBI jointly developed the subdivision, including platting the lots, installing utilities and streets, and constructing slopes and vistas on many of the lots.

Legacy Lakes sold five lots in the subdivision, including the lot at issue here, to Hawkins–Welwood Homes, L.P. (HWH), a custom home builder. In the agreement between Legacy Lakes and HWH, Legacy Lakes agreed to develop the lots in a good and workmanlike manner in accordance with the standards of the City of Frisco, but disclaimed any express or implied warranties regarding the physical condition of the lots, including warranties of habitability, merchantability, or fitness for a particular purpose. HWH agreed to rely on its own inspection of the lots and subdivision, or on its decision not to inspect them, and agreed to accept the lots "in their 'as is' condition, with all faults, and without warranty to merchantability or fitness for any specific purpose."

HWH built a custom home on the lake lot and sold the home and lot to Welwood, who was a partner in and the chairman of HWH. The back of Welwood's lot sloped down from the house to the lake. Before and after Welwood moved into the home, he constructed a retaining wall across the back of the lot and installed landscaping, pool decking, landscape lighting, and fencing. Shortly after these improvements were made, the slope of the back yard failed and slid toward the lake, damaging the improvements.

Welwood sued to recover damages for the cost to repair and stabilize the slope on his lot and to replace the retaining wall, landscaping, and other personal property damaged by the slope failure. He asserts the engineers hired by appellees recommended that a slope stability analysis be conducted on all slopes in the subdivision over three feet in height or where slopes were steeper than three to one. Welwood contends his lot met these criteria, but that appellees failed to conduct a slope stability analysis on his lot during development of the lot. This failure, he alleges, constituted negligence and a breach of an implied warranty of good and workmanlike development services. The DTPA claim is based on the alleged breach of this implied warranty.

Appellees moved for traditional summary judgment on the ground, among others, that the "as is" clause in the contract with HWH bars all of Welwood's causes of action. Appellees also moved for a no evidence summary judgment on each of Welwood's causes of action. The trial court granted summary judgment for appellees without specifying particular grounds for the judgment. Welwood appeals.

## II. STANDARD OF REVIEW

The standards for reviewing traditional summary judgments are well established and we follow them in reviewing this appeal. *See Nixon v. Mr. Property Manage-*

*ment Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (summary judgment standards of review).

## III. EFFECT OF "AS IS" CLAUSE

The summary judgment evidence established that the Agreement of Sale and Purchase between Legacy Lakes and HWH contained the following provision:

> AS A CONDITION PRECEDENT TO SELLER'S UNDERTAKINGS AND AGREEMENTS HEREUNDER, SELLER EXPRESSLY DISCLAIMS AND PURCHASER ACKNOWLEDGES AND ACCEPTS THAT SELLER HAS DISCLAIMED MAKING ANY REPRESENTATIONS, WARRANTIES, OR ASSURANCES WITH RESPECT TO THE SUBDIVISION OR THE LOTS, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, ORAL OR WRITTEN, INCLUDING BUT NOT LIMITED TO, REPRESENTATIONS OR WARRANTIES AS TO ... PHYSICAL CONDITION, ... HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. PURCHASER AGREES THAT WITH RESPECT TO THE SUBDIVISION AND THE LOTS IT WILL RELY UPON ITS INSPECTION THEREOF OR ITS DETERMINATION NOT TO INSPECT THE SAME, AND UPON CLOSING SHALL ACCEPT THE LOTS IN THEIR "AS IS" CONDITION, WITH ALL FAULTS, AND WITHOUT WARRANTY TO MERCHANTABILITY OR FITNESS FOR ANY SPECIFIC PURPOSE.

The agreement also provided that Legacy Lakes relied on the reputation of HWH as a reputable home builder of the type of single-family homes it sought for the subdivision. Legacy Lakes agreed to develop the lots in accordance with the standards of the City of Frisco and deliver to HWH copies of all compaction studies and tests and all soil density tests covering the lots. (Welwood does not assert a breach of these agreements.) Welwood signed the agreement on behalf of HWH and initialed several handwritten changes to the agreement.

Welwood's third issue argues that the "as is" clause in the contract between Legacy Lakes and HWH does not bar all of his causes of action. In his response to the motion for summary judgment, Welwood argued that the "as is" clause is not effective against his claims because he was not, individually, a party to the agreement between Legacy Lakes and HWH. In his reply brief on appeal, Welwood argues that appellee BDI cannot rely on the agreement because it was not a party to it. Finally, Welwood argues that the implied warranty of development services he asserted cannot be waived or disclaimed.

### A. Applicable Law

■ In general, a valid "as is" agreement negates the element of causation necessary to recover on claims regarding the physical condition of the property. *See Prudential Ins. Co. of Amer. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995); *Gym–N–I Playgrounds, Inc. v. Snider*, 158 S.W.3d 78, 85 (Tex.App.-Austin 2005, pet. granted) (applying "as is" clause in commercial lease to bar claims for failure to install fire sprinkler system); *Bynum v. Prudential Residential Servs., Ltd. ·P'ship*, 129 S.W.3d 781, 788 (Tex. App.-Houston [1st Dist.] 2004, pet. denied) (applying "as is" clause in sale agreement for remodeled home to bar claims relating to remodeling work). The terms of a typical "as is" clause also disclaim the existence of any express or implied warranties. *See Prudential*, 896 S.W.2d at 161 (citing TEX. BUS. & COM.CODE ANN. § 2.316(c)(1)

(Vernon 1994)). By agreeing to purchase the property "as is," the buyer agrees to make his own assessment of the bargain and to accept the risk that he may be wrong. *Id.* The seller gives no assurances, express or implied, concerning the value or condition of the thing sold, and the buyer chooses to rely on his own determination of the value and condition of the purchase, thus eliminating the possibility that the seller's conduct will cause him damage. *Id.*

 An "as is" agreement is not determinative in every circumstance. For example, if the "as is" agreement is fraudulently induced by misrepresentation or concealment, it will not be binding. *Id.* at 162. A seller may not obstruct the buyer's right of inspection and still rely on an "as is" provision. *Id.* The nature of the transaction and the totality of the circumstances surrounding the agreement must be considered. *Id.* Whether the "as is" clause is an important part of the basis of the bargain or an incidental or "boilerplate" provision and whether the parties have relatively equal bargaining positions are factors to consider. *Id.*

## B. Discussion

### 1. Legacy Lakes

We express no opinion regarding a scenario where a remote purchaser has no knowledge of an "as is" clause in a remote contract. Such a case is not before us. Here, Welwood, as chairman of HWH negotiated and signed the Legacy Lakes "as is" agreement on behalf of HWH and had subjective knowledge of the "as is" agreement and disclaimer of warranties. Welwood cannot be surprised that the lots were sold to his company and immediate seller (HWH) on an "as is" basis without warranties.

Welwood did not challenge the validity of the "as is" clause under the fraudulent inducement, obstruction, or other factors discussed in *Prudential* in his summary judgment response. *See Prudential,* 896 S.W.2d at 162. There is nothing in the record to indicate the transaction between Legacy Lakes and HWH was not arm's length or was tainted by any fraudulent activity. Nor is there any contention that HWH was prevented from inspecting the lots prior to the sale. HWH represented in the agreement that it was a reputable home builder and Legacy Lakes expressly relied on that reputation in agreeing to sell the lots to HWH. Welwood did not argue that Legacy Lakes and HWH were not in a relatively equal bargaining position. Although Welwood generally referred to the "as is" clause as boilerplate in his response, he did not argue or present evidence that the "as is" clause was not part of the basis of the bargain between Legacy Lakes and HWH. Thus, the nature of the transaction and the totality of the circumstances surrounding the agreement do not show that the "as is" clause is invalid. *See Prudential,* 896 S.W.2d at 162.

Welwood argues that contracts are binding only on the parties to them and attempts to distinguish *Prudential* because the plaintiff personally signed the "as is" agreement in that case. In *Prudential,* Goldman purchased an office building from Prudential under a contract containing an "as is" clause and disclaimer of express and implied warranties. *Prudential,* 896 S.W.2d at 160. Four months later, Goldman conveyed the building to Jefferson Associates, Ltd., a partnership he formed with other investors. *Id.* at 159. When asbestos was later discovered in the building, both Goldman and Jefferson sued Prudential under various causes of action and were awarded damages based on a jury verdict. *Id.* at 159–60. The supreme court noted that the interests of Goldman and Jefferson were aligned and referred

only to Goldman in the remainder of the opinion. *Id.* at 158. The parties here dispute the significance of the relationship between Goldman and Jefferson, but one thing is clear—Jefferson as a subsequent purchaser from Goldman, under the facts of that case, acquired no greater rights than Goldman in relation to the "as is" clause in Goldman's contract with Prudential. Although Jefferson is not specifically mentioned, the supreme court reversed the lower court's judgment and rendered judgment that Goldman take nothing. *Id.* at 164.

■ Welwood here is in a similar position to Jefferson's in *Prudential.* He purchased the property from his own partnership (HWH), which had bought the property under an "as is" agreement with Legacy Lakes. To accept Welwood's argument that he is not bound by the "as is" agreement, we would have to conclude the supreme court was wrong to render judgment against Jefferson based on the "as is" clause in Goldman's contract with Prudential. We decline to do so because we conclude that by reason of his position in HWH, his negotiation of the agreement on behalf of HWH, and his purchase of the property from HWH, Welwood's interests are aligned with HWH in relation to the "as is" clause.

Further, because the effect of a valid "as is" clause is to negate causation, Welwood cannot establish that appellees' conduct caused his damages. *See Prudential,* 896 S.W.2d at 161. HWH assumed the entire risk of the transaction when it purchased the lot "as is." It agreed to "accept the lots in their 'as is' condition, with all faults, and without warranty to merchantability or fitness for any specific purpose." It then sold the lot to Welwood, its chairman and one of its partners. Welwood cannot now leap-frog over HWH to reimpose the risks of the transaction on appellees after they had contracted away that risk.

Welwood also attempts to distinguish *Prudential* because it did not involve an implied warranty and was a misrepresentation case. We do not see this distinction as significant. Welwood's theory is that appellees failed to conduct a slope stability analysis on his lot and disclose the latent instability of the slope. These facts are similar to the allegations in *Prudential* that Prudential failed to discover and disclose the existence of asbestos in the building. *See Prudential,* 896 S.W.2d at 159. Although Welwood alleged the breach of an implied warranty, the essential facts of non-disclosure of a condition of the property are the same as in *Prudential.* Further, the nature of an "as is" clause is to avoid the creation of any warranties, express or implied; thus the clause negates such warranties to the extent allowed by law. The "as is" clause in this case is very similar to the one in *Prudential.* Both expressly disclaim the creation of express or implied warranties, including fitness for a particular purpose. Both disclaimers indicate the purchaser is relying on its own inspection of the property and is taking the property "as is" with all faults or defects. *See Prudential,* 896 S.W.2d at 160. Thus, the terms of the "as is" clauses would extend to breach of implied warranty claims as well as the claims raised in *Prudential.*

Other cases indicate that disclaimers may apply to subsequent purchasers. For example, while holding that parties could recover for breach of the UCC implied warranty of merchantability without regard to privity, the supreme court also recognized that manufacturers could protect themselves from unlimited and unforeseeable liability by disclaiming or modifying such warranties. *Nobility Homes of Tex., Inc. v. Shivers,* 557 S.W.2d 77, 82 &

n. 7 (Tex.1977) (citing Tex. Bus. & Com.Code Ann. § 2.316(c)). Recently the supreme court referenced that sellers can use valid disclaimers or modifications of implied warranties to protect against downstream liability. *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 88 & n. 35 (Tex.2004) (citing *Nobility Homes* for the proposition that downstream parties can sue on breach of implied warranty claims without privity, but noting, "This presumes no valid disclaimer or modification.").

Similarly, remote purchasers cannot use their remoteness from the transaction as both a sword and a shield. They may not rely on the absence of privity to bring causes of action against a remote seller and at the same time assert that privity is required for the seller to rely on contractual disclaimers or "as is" clauses. *Cf. Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 110 (Tex.App.-Houston [14th Dist.] 2000, no pet.) ("Hou–Tex uses its remoteness from the original sales transaction as both a sword and a shield: it asserts its ability to sue, but uses its distance from the sales transaction to deny Landmark its UCC protections. Hou–Tex cannot have it both ways. If a third party can sue a seller for breach of express warranty, as we must assume for this appeal, the seller's disclaimers of warranties apply to the third party.").

An argument similar to Welwood's was rejected in *Bynum*, 129 S.W.3d at 793. Bynum bought a remodeled house under an "as is" contract with Prudential. The previous owner, McNamara, had remodeled the house using a contractor. When problems with the remodeling work later developed, Bynum sued McNamara and Prudential for negligence, DTPA violations, and breach of implied warranty. Bynum sought to avoid the "as is" clause by arguing that his minor children were

not parties to the contract and not bound by the disclaimer. The court rejected this argument, stating "because third-party beneficiaries are not entitled to greater contractual rights than were bargained for by the original parties to the contract, we hold that the Bynum children are not entitled to have the 'as is' clause set aside on the ground that they were not parties to the contract." *Id.* While Welwood does not claim to be a third-party beneficiary of the Legacy Lakes/HWH agreement, he has not shown how he should be entitled to greater contractual rights than those he bargained for on behalf of HWH.

Considering the nature of the transaction and the totality of the circumstances surrounding the "as is" agreement, we conclude that Welwood's interests are aligned with HWH and that under the facts presented here, he may not set aside the "as is" agreement merely because he was not a party to that agreement.

### 2. BDI

■■■ In his reply brief on appeal, Welwood argues for the first time that BDI cannot rely on the "as is" clause because it was not a party to the Legacy Lakes/HWH agreement. However, Welwood did not raise this issue in his response to the motion for summary judgment and we will not consider it on appeal. Tex.R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

### 3. Disclaimer of Implied Warranty

■■■ Welwood argued in his summary judgment response that the implied warranty of good and workmanlike development cannot be disclaimed by an "as is" clause. Welwood relies on *Luker v. Arnold*, 843 S.W.2d 108, 120 (Tex.App.-Fort

Worth 1992, no writ)[1] for the proposition that Texas law implies a warranty of good and workmanlike development running to subsequent purchasers.

In *Luker*, the Fort Worth Court of Appeals for the first time recognized an implied warranty of good and workmanlike development services regarding septic systems based on evidence of public health concerns and regulations regarding septic system failures caused by small lot sizes. *Id.* at 116. (Welwood did not present similar evidence of public policy concerns regarding slope stability.)

The supreme court has not recognized the implied warranty of good and workmanlike development services found in *Luker*, and has rejected a similar implied warranty regarding future development services. In fact, the supreme court expressly refused to impose an implied warranty on real estate developers to perform future development services in a good and workmanlike manner, finding "no reasonable basis under these facts for concluding that Parkway impliedly agreed to perform future development services for the Woodruff's benefit." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 439–40 (Tex.1995). Further, the supreme court has stated that public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need, and there is no compelling need when other adequate remedies are available to the consumer. *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex.1998) (no implied warranty that services incidental to helicopter maintenance will be performed in a good and workmanlike man-

ner). We have also refused to recognize an implied warranty of performance in a good and workmanlike manner in an equipment rental contract. *Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 208–09 (Tex.App.-Dallas 2003, no pet.).

Assuming without deciding that Texas imposes an implied warranty of good and workmanlike development on real estate developers, we consider whether that warranty can be disclaimed. The supreme court has recognized an implied warranty for services *only* when the services relate to the repair or modification of existing tangible goods or property. *Rocky Mountain Helicopters*, 987 S.W.2d at 52–53 (citing *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.1987)). As a matter of public policy, this implied warranty for repair services cannot be waived or disclaimed. *Melody Home*, 741 S.W.2d at 355; *see also Centex*, 95 S.W.3d at 270. Welwood agrees the implied warranty of repair services does not apply to this case.

 In *Centex Homes v. Buecher*, the supreme court considered whether the implied warranties of good and workmanlike construction and of habitability owed by *builders* of new homes could be disclaimed. 95 S.W.3d 266 (Tex.2002). The implied warranty of good workmanship is conduct oriented and serves as a "gap filler" if the parties do not provide how the builder or structure is to perform. *Id.* at 273. It establishes a minimum standard of care for new home builders. *Id.* Because the purpose of this implied warranty is to serve as a "default warranty," it applies unless and until the parties express a contrary intention. *Id.* Thus, the builder's

---

1. In *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship,* the supreme court concluded that DTPA claims could not be assigned and overruled *Luker* to that extent. 146 S.W.3d 79, 82 n. 1, 92 (Tex.2004) (characterizing *Luker* as "holding assignment of DTPA claims valid despite absence of acknowledgment, delivery after assignees' bankruptcy, and limitations").

implied warranty of good workmanship "may be disclaimed by the parties when their agreement provides for the manner, performance or quality of the desired construction." *Id.* at 274–75. The warranty of habitability is distinct; it is result oriented and focuses on the finished product. *Id.* at 273. The warranty of habitability is an essential part of the a new home sale and may not be disclaimed generally. *Id.* at 275.

Welwood acknowledges that neither the builder's implied warranty of habitability nor the implied warranty for repair services apply to this case. But he argues the same rationale for not allowing disclaimers of those warranties should control this case. However, the implied warranty for which Welwood contends is most like the implied warranty of good and workmanlike construction discussed in *Centex,* which may be disclaimed. *See Centex,* 95 S.W.3d at 272–73. This warranty focuses on the quality of the developer's services and what an ordinary and prudent developer would have done under similar circumstances. *See Luker,* 843 S.W.2d at 115. This type of implied warranty serves as a "gap filler" or "default warranty" where the parties fail to provide an express standard of performance. *Centex,* 95 S.W.3d at 273.

Here, there is no need for a "gap filler" warranty. The Legacy Lakes/HWH agreement provided for the manner, performance or quality of the desired services—Legacy Lakes agreed to develop the lots in a good and workmanlike manner in accordance with the standards of the City of Frisco; Welwood never asserted that this standard was not met. Any other warranty was expressly disclaimed by the "as is" provision. If an implied warranty of good and workmanlike development is recognized by Texas law, it is similar to the implied warranty of good workmanship imposed on home builders and may be disclaimed. *See id.* at 274–75.

## IV. CONCLUSION

The supreme court has not recognized the implied warranty of developer services contended for by Welwood, much less held that such a warranty cannot be disclaimed. We conclude that if such an implied warranty does exist, it was effectively disclaimed in the Legacy/HWH contract. We resolve Welwood's third issue against him. Because resolution of this issue disposes of this appeal, we need not reach Welwood's other issues. TEX.R.APP. P. 47.1; *see Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

We affirm the trial court's judgment.