ACCEPTED
03-14-00131-CV
7874643
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/17/2015 5:18:59 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00131-CV

## THIRD COURT OF APPEALS
## AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/17/2015 5:18:59 PM
JEFFREY D. KYLE
Clerk

### *ZBRANEK CUSTOM HOMES, LTD.*

**Appellant**

**v.**

### *JOE ALLBAUGH AND DIANE ALLBAUGH*

**Appellees**

**Appealed from the 419th Judicial District Court of
Travis County, Texas**

_____

### APPELLANT ZBRANEK CUSTOM HOMES, LTD.'S
### MOTION FOR REHEARING

_____

David E. Chamberlain
Tim Poteet
Erin Westendorf-Boyd
CHAMBERLAIN ♦ McHANEY
301 Congress Avenue, 21st Floor
Austin, Texas   78701
(512) 474-9124
(512) 474-8582 (Facsimile)
dchamberlain@chmc-law.com
tpoteet@chmc-law.com
ewestendorf@chmc-law.com

**ATTORNEYS FOR APPELLANT**

# TABLE OF CONTENTS

Index of Authorities ..........................................................................................3

Causation Evidence Was Insufficient to Support Finding ......................................6

Damages Evidence Was Insufficient to Support Award .......................................10

Contractual Waiver of Rights Should Apply to Bar Recovery ............................15

The "As Is" Clause Should Apply to Bar Recovery...............................................20

Prayer ...................................................................................................................22

# INDEX OF AUTHORITIES

Cases

*Ace Prop. & Cas. Ins. Co. v. Prime Tempus, Inc*.
No. 03-06-00236-CV, 2009 WL 2902713 (Tex. App.
—Austin 2009, no pet.)...................................................................................... 20

*Atl. Mut. Ins. Co. v. Crow Design Centers*
148 S.W.3d 743 (Tex. App.—Dallas 2004, no pet.) ........................................... 18

*City of Keller v. Wilson*
168 S.W.3d 802 (Tex. 2005)......................................................... 9, 10, 13, 14

*Cooper Tire & Rubber Co. v. Mendez*
204 S.W.3d 797 (Tex. 2006)............................................................................... 13

*Crisp v. Security Nat'l Ins. Co.*
369 S.W.2d 326 (Tex. 1963)......................................................................... 10, 11

*Daubert v. Merrell Dow Pharms., Inc*.
509 U.S. 579 (1993) ............................................................................................. 6

*Edgar v. Stanolind Oil & Gas Co*.
90 S.W.2d 656 (Tex. Civ. App.—Austin 1935, writ ref'd)................................. 16

*E.I. du Pont de Nemours & Co. v. Robinson*
923 S.W.2d 549 (Tex. 1995)................................................................................. 6

*Gharda USA, Inc. v. Control Solutions, Inc*.
464 S.W.3d 338 (Tex. 2015)........................................................... 6, 7, 8, 9, 10

*Gulf States Utilities Co. v. Low*
79 S.W.3d 561 (Tex. 2002)................................................................................. 11

*Helena Chem. Co. v. Wilkins*
47 S.W.3d 486 (Tex. 2001).................................................................................. 12

*Highland v. City of Galveston*
54 Tex. 527 (1881)............................................................................................... 16

*Income Apartment Investors, L.P. v. Bldg. Diagnostics, Ltd.*
No. 03-97-00656-CV, 1998 WL 476777 (Tex. App.—Austin 1998,
no pet.)......................................................................................................... 21

*Liberty Sign Co. v. Newsom*
426 S.W.2d 210 (Tex. 1968)............................................................................ 20

*MAN Engines & Components, Inc. v. Shows*
434 S.W.3d 132 (Tex. 2014).................................................................... 19, 22

*New Texas Auto Auction Services, L.P. v. De Hernandez*
249 S.W.3d 400 (Tex. 2008)............................................................................ 19

*Prudential Ins. Co. of Amer. v. Jefferson Assocs., Ltd.*
896 S.W.2d 156 (Tex. 1995)...................................................................... 18, 21

*Redman Homes v. Ivy*
920 S.W.2d 664 (Tex. 1996)............................................................................ 11

*State v. Vaughan*
319 S.W.2d 349 (Tex. Civ. App.—Austin 1958, no writ).................................. 16

*Trinity Universal Ins. Co. v. Bill Cox Constr. Inc.*
75 S.W.3d 6 (Tex. App.—San Antonio 2001, no pet.)....................................... 17

*TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*
233 S.W.3d 562 (Tex. App.—Dallas 2007, pet. denied).................................... 17

*TXI Transp. Co. v. Hughes*
306 S.W.3d 230 (Tex. 2010)............................................................................ 6

*Walker Eng'g, Inc. v. Bracebridge Corp.*
102 S.W.3d 837 (Tex. App.—Dallas 2003, pet. denied).................................... 17

*Wal-Mart Stores, Inc. v. Merrell*
313 S.W.3d 837 (Tex. 2010)............................................................................ 6

*Welwood v. Cypress Creek Estates, Inc.*
205 S.W.3d 722 (Tex. App.—Dallas 2006, no pet.) .................................... 18, 20

*Whirlpool Corp. v. Camacho*
298 S.W.3d 631 (Tex. 2009) ........................................................................ 6

Rules

Tex. R. App. P. 9.4(e) .................................................................................. 24

Tex. R. App. P. 9.4(i)(1) ............................................................................. 24

Tex. R. App. P. 9.4(i)(2)(D) ....................................................................... 24

Tex. R. App. P. 49 ......................................................................................... 6

Tex. R. Evid. 702 ......................................................................................... 12

**TO THE HONORABLE COURT OF APPEALS:**

Appellant Zbranek Custom Homes, Ltd., respectfully asks the Court to withdraw its opinion and decision of November 3, 2015, and to reconsider Zbranek's appeal, pursuant to Tex. R. App. P. 49. Zbranek relies on the following points for rehearing:

### Causation Evidence Was Insufficient to Support Finding

1.    Zbranek contends that the evidence was legally, or, in the alternative, factually, insufficient to prove its acts or omissions relating to the subject fireplace caused the fire. The Court rejects this contention, holding that causation in general is a fact question. Slip op. at 11. However, the opinion does not cite or analyze the Allbaughs' expert evidence under the rules and reasoning in *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993), *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995), and their progeny, that set out current standards for evaluating expert testimony and its relation to sufficiency of evidence review.[1]

Moreover, the Court's opinion does not fairly state Zbranek's arguments in its analysis. The Court states that "While Zbranek correctly notes that the Allbaughs' experts did not testify about what the actual temperatures were at the specific locations where the fire started, there was nonetheless sufficient evidence

---

[1] Zbranek cited, *e.g., Whirlpool Corp. v. Camacho*, 298 S.W.3d 631 (Tex. 2009); *TXI Transp. Co. v. Hughes,* 306 S.W.3d 230 (Tex. 2010); *Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837 (Tex. 2010); and *Gharda USA, Inc. v. Control Solutions, Inc*., 464 S.W.3d 338 (Tex. 2015).

from which a reasonable fact finder could infer that faulty construction of the fireplace caused the home fire." *Id*. at 12. Respectfully, it is Zbranek's specific contention that the Allbaughs offered no facts to prove that the temperatures were sufficient to cause the fire at the locations where the Allbaughs contend the fire started.

Instead the Allbaughs' experts offered only conclusory assertions that the temperatures at those locations were sufficient. Their opinion testimony was based on no testing or calculations or other reliable basis, and amounted to only speculation based on generic information that left an analytical gap between the conclusions offered and the facts purporting to support them. The Texas Supreme Court has consistently reversed judgments based on similarly insufficient expert evidence, most recently in *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338 (Tex. 2015), a fire loss case having issues very similar to those here.

In *Gharda USA*, the court considered whether interdependent opinion testimony of four experts was reliable, and held that the testimony of all four experts was unreliable because the individual opinion testimony of at least two experts was unreliable and the remaining two experts based their opinions on the first two experts' unreliable opinions. 464 S.W.3d at 342. Because all of the plaintiffs' expert testimony was unreliable, there was no evidence of an essential element of the plaintiffs' claims, and the court rendered judgment that the claimant

take nothing. *Id.* Zbranek believes the same reasoning should apply here and have the same result.

Zbranek agrees that the Allbaughs' experts did not connect the dots, but respectfully disagrees that the jury was entitled to infer causation from their testimony. *See Gharda*, 464 S.W.3d at 353 (jury prohibited from inferring causation based on circumstantial evidence and unreliable expert opinion testimony). The Allbaughs offered only theories and assumptions, and presented no calculations, research, or tests to determine whether there was sufficient heat to start a fire in the way they conjectured. The testimony has analytical gaps and "is connected to existing data only by the *ipse dixit* of the expert." *See id.* at 351. Their conclusory testimony was unsupported, unreliable and constituted no evidence, like that of the experts in *Gharda USA*. *See id.* at 350-52.

Further, the Allbaughs' experts did not provide competent and sufficient testimony ruling out all other possible causes. In particular, Zbranek quoted testimony from the Allbaughs' expert electrical engineer Mark Goodson that he could not rule out an electrical cause for the fire. RR 4:58, lines 17-25; RR 4:59, lines 1-3; 4:60, lines 21-25; 4:61, lines 1-4; 4:63, lines 1-10; 4:67, lines 21-24; 4:74, lines 21-25; 4:76, lines 4-6. The Allbaughs' causation expert, Michael Chaney is not an electrical engineer or even an electrician, and he deferred to Goodson's opinion on all electrical issues. RR 6:217, lines 7-25; 6:218, lines 1-6. The

Allbaughs did not offer competent testimony of any other qualified witness to rule out electrical causes. "No evidence" review cannot disregard evidence that a witness is unqualified to give an opinion. *See City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005).

Expert evidence that fails to meet reliability standards is not only inadmissible but also incompetent. *Id*. An appellate court conducting a no-evidence review cannot consider only an expert's bare opinion, but must also consider contrary evidence showing it has no scientific basis. *Id*. Such is the case here, as Goodson's specific testimony negated any conclusory assertions of any other expert of the Allbaughs. Evidence that might be "some evidence" when considered in isolation is nevertheless rendered "no evidence" when contrary evidence shows it to be incompetent. *Id*. The Court appears to have disregarded Goodson's testimony that he could not rule out an electrical cause for the fire.

In addition, testimony that there "*may have been* a 'false chimney'" into which hot flue gases "*may have* escaped," is equivocal, conclusory and unsupported testimony, and as such is legally insufficient.[2] *See Gharda USA,* 464 S.W.3d at 350 (stating "reliable expert testimony must be based on a probability standard, rather than on mere possibility" and holding "possibility" testimony legally insufficient).

---

[2] Emphasis added.

Applying the controlling principles in *Gharda USA* and *City of Keller*, the Allbaughs' experts' causation opinions were incompetent and conclusory. Consequently, they were legally (or factually) insufficient. Zbranek respectfully requests the Court to reconsider the evaluation of the Allbaughs' experts' testimony, particularly in light of the Texas Supreme Court's analysis of the testimony of four experts in *Gharda USA*, which that court found legally insufficient. For the same essential reasons, the Allbaughs' expert evidence was legally or, in the alternative, factually, insufficient to support the causation finding and judgment.

### *Damages Evidence Was Insufficient to Support Award*

2.    Zbranek respectfully asks the Court to reconsider Zbranek's contention that the evidence of the replacement cost of the property damaged in the subject fire was legally or, in the alternative, factually, insufficient to support the damages awarded to the Allbaughs. There was no other competent or sufficient evidence. The Court's opinion holds that evidence of replacement cost is sufficient, stating that "replacement cost is one of the factors that fact-finders may consider in making the determination of actual value," citing *Crisp v. Security Nat'l Ins. Co.*, 369 S.W.2d 326, 329 (Tex. 1963). Slip op. at 13. The Court also stated "Zbranek has cited no authority for the proposition that the plaintiff must present evidence on all of these factors or on any more than one of them, and we decline to broaden the

holding of *Crisp* to so require." *Id*. Respectfully, Zbranek believes it did submit authority that the Allbaughs were required to present evidence of value beyond replacement cost and that no extension of *Crisp* is required to hold that the Allbaughs' evidence was legally or factually insufficient.

Specifically, Zbranek cited the statement in *Crisp* that, for recovery of actual value, "replacement costs do not afford a fair test." 369 S.W.2d at 328. Zbranek also cited *Gulf States Utilities Co. v. Low,* 79 S.W.3d 561, 566 (Tex. 2002) (stating "replacement cost is rarely, if ever, the appropriate measure for such personal property") and *Redman Homes v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996), where the court noted that the owner's estimate of lost property's value is probative if based on the owner's estimate of market value and *not* some intrinsic value or other value such as *replacement cost*. *Id*. at 669. These authorities show that replacement costs alone do not afford a basis from which a fact-finder may determine actual value of damaged personal property, and an award of damages for replacement cost results in a windfall recovery. *See* Appellant's Brief at 43-44.

In fact, the *Gulf States* court cited *Crisp* as support for the statement "[i]n some situations, replacement value does not properly measure damages because it may represent an economic gain to the plaintiff (citations omitted). This may be true for household goods, clothing, and personal effects." 79 S.W.3d at 566 (citing *Crisp*, 369 S.W.2d at 328). That is Zbranek's contention. *Crisp* held that fact

finders may consider original cost; cost of replacement; opinions of qualified witnesses, including owner; and use to which property was put in making actual-value determination. *See Crisp*, 369 S.W.2d at 329, 330-31. *Crisp* and the other authorities cited indicate that evidence of replacement cost should be presented in conjunction with other evidence that provides a basis for the fact-finder to decide the actual value of the property to the owner at the time of the damage. Zbranek respectfully submits based on the foregoing authorities that no extension of Texas law is necessary to hold that evidence of replacement cost alone for lost personal property having no market value is, legally or factually, insufficient.

In addition to its contention that even proper replacement cost evidence alone could not be sufficient, Zbranek contends the Allbaughs' evidence did not constitute proper evidence of replacement cost or of any other value. The Allbaughs' retained witness, Sandra Garber was not competent to testify as an expert under Tex. R. Evid. 702. That she has a library degree and looks up "replacement cost" prices on the internet for her employer, as the record indicates, is insufficient to render her a qualified and competent witness under Texas law. In deciding if an expert is qualified, trial courts "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). Admission of expert testimony that does not meet the reliability

requirement is an abuse of discretion. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). Looking up information on the internet and putting it in a report may be what Ms. Garber's job entails, but merely doing that should not be sufficient to make anyone an expert on the actual value of property to the Allbaughs. Without the internet, Ms. Garber would have had no opinion at all. Information consisting of prices found on the internet for purportedly similar property should not be competent or sufficient expert evidence of replacement costs for the property. Finally, the Allbaughs' own testimony, which the Court charitably describes as "cursory," was legally (or factually) insufficient to assist the jury in finding a dollar value for the lost property and to support the finding the jury did make. *See* slip op. at 13. When the evidence offered to prove a vital fact is no more than a mere scintilla, there is no evidence. *City of Keller*, 168 S.W.3d at 810.

That the jury entered dollar values in the verdict form does not change the fact that they were provided only improper, incompetent and insufficient replacement cost information, which information permitted to them to do nothing other than speculate about the actual value of the property to the Allbaughs. Zbranek acknowledges, as the Court states, that a jury has discretion to determine damages within the range of evidence presented at trial, but there was no range of evidence in this case. The Court states that the difference between the damages the

Allbaughs requested and the amount the jury awarded may be explained by the jury's taking into account factors such as depreciation of the property, but the Court also notes that the Allbaughs' damages expert testified that replacement-value estimates do not take into account depreciation, age, or condition. Slip op. at 13-14. There was no actual evidence to enable the jury to assess depreciation. The Allbaughs only testified that the items were in "great condition" and they planned use the item "for a long time," which testimony gave the jury no basis to determine depreciation or any other component of "actual value" as defined by the charge and Texas law. The Allbaughs' own testimony was legally (or factually) insufficient to constitute an opinion about the property's value. *See City of Keller*, 168 S.W.3d at 810.

In summary, Zbranek did cite authority to support its argument that evidence of replacement cost alone was not sufficient to establish "actual damages" under Texas law; the only evidence of replacement value was offered by an unqualified witness and was unreliable and legally or factually insufficient; and the Allbaughs' testimony was legally or factually insufficient. The evidence allowed the jury to consider only improper information of replacement value and otherwise to speculate on the actual value of the property to the Allbaughs. The jury's damage award is based on legally insufficient evidence, or alternatively factually insufficient evidence.

*Contractual Waiver of Rights Should Apply to Bar Recovery*

3.      Zbranek contends that the waiver of rights in the construction contract between property owner Bella Cima Development and Zbranek applies to the Allbaughs because, among other reasons, (1) there is no dispute that the waiver would have applied to a similar claim for insured losses by Bella Cima arising from the subject fire, and (2) the Allbaughs as lessees of the house built by Zbranek and owned by Bella Cima should not have greater rights against Zbranek relating to insured loss involving the house than Bella Cima could have.[3] The Court declined to address Zbranek's argument that the Allbaughs as lessees of Bella Cima "could not have better rights than their lessor" against Zbranek, referring to this as a "bare assertion (unsupported by any relevant legal authority)." Slip op. at 8, n. 4. The Court's opinion further states "[w]e will not address this argument because we have already determined that a builder may owe a duty to non-parties to a construction contract, and Zbranek has cited no authority supporting its contention that this general duty should not apply to lessees." *Id*.

Zbranek believes it did present relevant authority that warrants the Court's consideration as explained below. Zbranek respectfully disagrees with the Court's separate determination that Zbranek owed a duty to the Allbaughs, but this determination alone should not be dispositive, because, regardless of any duty, the

---

[3] Of course, Bella Cima Development did not assert a claim.

Allbaughs should be bound by Bella Cima's waiver of rights to the extent of claims for losses covered by insurance relating to the subject house. Moreover, Zbranek has not argued that a common law duty of care generally *cannot* apply to a lessee as the Court's footnote indicates; instead Zbranek argues that *these* lessees, the Allbaughs, cannot recover for insured losses due to the waiver of rights in the construction contract between the Allbaughs' lessor, Bella Cima and Zbranek.

Zbranek respectfully requests that the Court reconsider the authorities it submitted and its argument that the waiver of rights applies to the Allbaughs as lessees of Bella Cima. First, Zbranek cited authority to support the argument that the Allbaughs as lessees cannot have greater rights than would their lessor Bella Cima. Zbranek cited cases involving rights of lessees, including (1) *Highland v. City of Galveston*, 54 Tex. 527, 533 (1881), which states "Had the plaintiff occupying the premises as tenant or lessee of the owner any other or greater right to recover damages than the lot owner would have had, had he himself been the occupant? In our opinion this question must be answered in the negative;" (2) *State v. Vaughan*, 319 S.W.2d 349, 354 (Tex. Civ. App.—Austin 1958, no writ), which states "All individuals hold property subject to the right of the State (and other entities) to condemn the same and of course tenants who occupy the property have no greater right than the owners" (emphasis added);[4] and (3) *Edgar v. Stanolind*

---

[4] *See* Appellant's Brief at 23.

*Oil & Gas Co.*, 90 S.W.2d 656, 657 (Tex. Civ. App.—Austin 1935, writ refused) (holding "Edgar could secure no greater right under the law than that vested in his lessors.")[5]

Second, though the Court determined that "a builder may owe a duty to non-parties to a construction contract," the waiver of rights should encompass rights arising from such a duty, including tort claims. Texas courts routinely enforce contractual pre-loss waivers of rights that preclude insurance subrogation claims based on alleged torts. *See, e.g., TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 567-568 (Tex. App.—Dallas 2007, pet. denied) (applying waiver provision in contract to bar subrogation claim for negligence, breach of contract, and warranty arising from fire loss); *Walker Eng'g, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 841 (Tex. App.—Dallas 2003, pet. denied) (holding contractual waiver of claims for insured losses barred negligence claims arising from electrical work that caused water pipe leak and flooding in building); *Trinity Universal Ins. Co. v. Bill Cox Constr. Inc.*, 75 S.W.3d 6, 8 (Tex. App.—San Antonio 2001, no pet.) (holding contractual waiver barred subrogating insurer's negligence claim arising from fire loss). Under these authorities, a waiver of rights would apply to any tort claim for fire loss covered by insurance that hypothetically

---

[5] Appellants' Reply Brief at 16.

would be asserted by Bella Cima or its subrogee insurer, so the existence of a tort claim for property damage does not of itself preclude application of the waiver.

Third, Bella Cima's waiver of rights for insured loss should apply to its lessee, the Allbaughs. It is undisputed that the only damages awarded were paid by the Allbaughs' insurer. Zbranek cited authorities supporting its contention that Bella Cima's waiver may apply to the Allbaughs who by means of the lease were in vertical privity with Bella Cima as to the house. In addition to the cases cited above relating to rights of lessees, Zbranek cited *Prudential Ins. Co. of Amer. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156 (Tex. 1995) and *Welwood v. Cypress Creek Estates, Inc.,* 205 S.W.3d 722 (Tex. App.—Dallas 2006, no pet.). In *Welwood,* the court observed that in according to the *Jefferson* court's holding a secondary purchaser of the property at issue acquired no better rights than the primary purchaser and was bound by an "as is" clause in the agreement between primary purchaser and seller. *See Welwood*, 205 S.W.3d at 727-28 (enforcing "as is" clause against subsequent purchaser aligned with original purchaser). Zbranek believes the reasoning in those cases supports Zbranek's contentions and warrants the Court's consideration.[6]

---

[6] The court cites *Atl. Mut. Ins. Co. v. Crow Design Centers*, 148 S.W.3d 743, 744-45 (Tex. App.—Dallas 2004, no pet.), in which the court reversed a summary judgment based on a waiver of rights in a lease because there was no evidence for purposes of summary judgment of any contractual relationship between the appellee and the parties to the lease. The record in this case establishes the privity relationship between Zbranek and Bella Cima, and Bella Cima and the Allbaughs.

Mid-Continent also cited *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132 (Tex. 2014), which involves an analogous principle. There the court observed, in the context of an implied warranty claim arising out of a sale of used yacht engines, that as a matter of Texas common law "[w]hen a manufacturer disclaims implied warranties, such express language necessarily applies downstream to subsequent purchasers, as Buyer # 2 cannot tenably boast a greater warranty than that given to Buyer # 1." *Id*. at 133-34. The court reiterated:

> . . . [A] downstream purchaser cannot obtain a greater warranty than that given to the original purchaser, so if the manufacturer at the point of original sale makes a valid disclaimer of implied warranties, that disclaimer extends to subsequent purchasers.

*Id*. at 140. While the warranty at issue in *MAN Engines* arises from the UCC, issues of privity were left to the courts to determine under the common law. *Id*. at 137. Therefore the Texas Supreme Court's privity analysis in *MAN Engines* regarding warranty disclaimers, and its holding that a disclaimer made to the initial buyer is binding on any subsequent buyer, are relevant by analogy to the question whether contractual waivers of rights are binding on parties in vertical privity with one of the original contracting parties. Similarly, the court in *New Texas Auto Auction Services, L.P. v. De Hernandez*, 249 S.W.3d 400 (Tex. 2008), held that an auctioneer could not be liable to downstream purchasers for negligence in the sale of a product because the auctioneer had no duty to downstream purchasers, and additionally because the vehicle was sold "as is." *Id*. at 407. In each of these

instances, terms of agreement were held to apply to downstream parties. These authorities also support Zbranek's arguments.

Because the Allbaughs' rights in the property as lessees derived directly from Bella Cima as lessor, and Bella Cima could not recover from Zbranek for insured losses due to its waiver of rights, Bella Cima's lessees the Allbaughs likewise should not be able to recover from Zbranek for insured losses. *See, e.g., Welwood,* 205 S.W.3d at 726-27.[7] Zbranek believes the "successors and assigns" terms in the construction contract are sufficient to express the parties' intent that the waiver of subrogation apply to the Allbaughs as lessees of Bella Cima, according to the reasoning in *Liberty Sign Co. v. Newsom*, 426 S.W.2d 210, 214 (Tex. 1968) (holding the term "lessee" included "anyone holding through or under [lessee].") Zbranek respectfully submits that these authorities are relevant to the issues and its argument warrants the Court's consideration.

### *The "As Is" Clause Should Apply to Bar Recovery*

4.  The Court holds that Zbranek may not rely on the "as is" clause in the Allbaughs' lease with Bella Cima because it is not a party to the lease and, as a general rule, may not enforce its terms. Slip op. at 10. The Court also states that Zbranek did not cite any applicable authority that an "as is" clause in a lease

---

[7] The Allbaughs' rights in the property as lessees of Bella Cima derive from Bella Cima's rights. This fact, among others, materially distinguishes this case from *Ace Prop. & Cas. Ins. Co. v. Prime Tempus, Inc.*, No. 03-06-00236-CV, 2009 WL 2902713, at *4 (Tex. App.—Austin 2009, no pet.) (mem. op.).

precludes a lessee's causes of action against the manufacturer or builder of the thing leased. Id. Zbranek respectfully submits that it cited authority to support its contention that the "as is" clause in the Bella Cima-Allbaugh lease precludes the Allbaughs' claims against Zbranek because it removes the element of causation for any loss. *See Jefferson*, 896 S.W.2d at 161. The court in *Jefferson* enforced an "as is" term in a contract for sale of real property in favor of the seller and against both the purchaser and the separate entity to which the purchaser subsequently sold the property. *Id*. Under *Jefferson*, an "as is" clause negates the element of causation because, by agreeing to purchase something "as is," a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong. *Id*.

This Court, referring to *Jefferson* as "the leading case on the protection of 'as is' clauses," enforced an "as is" clause in the sale of an apartment building <u>in favor of a non-party</u>. *See Income Apartment Investors, L.P. v. Bldg. Diagnostics, Ltd.,* No. 03-97-00656-CV, 1998 WL 476777 (Tex. App.—Austin 1998, no pet.). The Court expressly rejected the argument that the defendant could not benefit from the "as is" clause in the sale contract because it was not a party to the contract. *Id*. at *3. Though Zbranek cited *Jefferson* and *Income Apartment Investors*, the Court's opinion does not refer to either case. The Allbaugh's claims arose from a condition of property that they expressly accepted "as is" in the lease with Bella Cima. Zbranek argues under those authorities that the "as is" clause

would have defeated the element of causation if the Allbaughs had sued Bella Cima, the lessor of the house, and there is no reason for a different result in a claim against the builder of the house with which Bella Cima contracted. In addition, Zbranek pointed out the Texas Supreme Court's opinion which asked the question whether an upstream manufacturer could benefit from an "as is" clause in a downstream sale to which it was not a party. *See MAN Engines & Components*, 434 S.W.3d at 140. The court did not answer the question for procedural reasons, *id*. at 141, but Zbranek believes that this Court should address it, and hold that the purchaser or lessor or claimant who takes under a contract with an "as is" clause cannot "leap frog" over the immediate seller or lessor and sue a party in vertical privity.

**WHEREFORE, PREMISES CONSIDERED**, Appellant Zbranek Custom Homes, Ltd., respectfully prays that the Court reconsider its appeal for the reasons set out above, and those in the previously filed briefs, reverse the judgment of the trial court, and render judgment that the Allbaughs and Chubb Insurance Company take nothing. In the alternative, Appellant Zbranek Custom Homes, Ltd., asks the Court to reverse the judgment of the trial court and remand this case for a new trial on all issues. Appellant Zbranek Custom Homes, Ltd., respectfully prays for all other and further relief to which it may be entitled at law or in equity.

Respectfully submitted,

CHAMBERLAIN ♦ McHANEY
301 Congress Avenue, 21st Floor
Austin, Texas   78701
(512) 474-9124
(512) 474-8582 (fax)
tpoteet@chamberlainmchaney.com
dchamberlain@chamberlainmchaney.com
ewestendorf@chamberlainmchaney.com

By:    /s/ Tim Poteet
        Tim Poteet
        State Bar No. 16170300
        David E. Chamberlain
        State Bar No. 04059800
        Erin Westendorf-Boyd
        State Bar No. 24042142

**ATTORNEYS FOR APPELLANT**

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i)(2)(D) and contains 4,453 words, excepting the portions listed in Tex. R. App. P. 9.4(i)(1).

By: <u>/s/ Tim Poteet</u>
TIM POTEET
State Bar No. 16170300

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing has been forwarded to counsel of record as indicated via Electronic Court Filing, this 17th day of November, 2015:

Suzanne Radcliff
Cozen O'Connor
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
214/462-3011 Telephone
214/462-3299 Facsimile
(972) 803-1753
(972) 803-3531

By:    /s/ Tim Poteet
       TIM POTEET
       State Bar No. 16170300